### PENNSYLVANIA AVENUE DEVELOPMENT CORPORATION

v.

**ONE PARCEL OF LAND IN the DISTRICT OF COLUMBIA, et al. National Press Building Corporation, Appellants.**

### PENNSYLVANIA AVENUE DEVELOPMENT CORPORATION

v.

**ONE PARCEL OF LAND IN the DISTRICT OF COLUMBIA, et al. Edmund W. Dreyfuss, et al., Appellants.**

Nos. 80–1538, 80–1574.

United States Court of Appeals, District of Columbia Circuit.

Argued April 30, 1981.

Decided Dec. 18, 1981.

Neil I. Levy, Washington, D. C., with whom Warren K. Kaplan, Washington, D. C., was on the brief, for National Press Building Corp., appellant in No. 80–1538 and appellee in No. 80–1574.

Stanley J. Fineman, Washington, D. C., with whom J. Hampton Baumgartner, Jr., and Charles A. Camalier, III, Washington, D. C., were on the brief, for Dreyfuss, et al., appellees in No. 80–1538 and appellants in No. 80–1574.

James W. Moorman, Edward J. Shawaker and A. Donald Mileur, Attys., Dept. of Justice, Washington, D. C., were on the statement in lieu of brief, for Pennsylvania Avenue Development Corp., appellee in No. 80–1538.

Before WALD and GINSBURG, Circuit Judges, and McGOWAN, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge McGOWAN.

McGOWAN, Senior Circuit Judge:

These consolidated appeals challenge the District Court's allocation of a condemnation award of $7,250,000. In No. 80–1538, the National Press Building Corporation

(NPBC) complains of the District Court's refusal to enter judgment in its favor for the entire award. In No. 80–1574, Edmund W. Dreyfuss, Stanley Reines, Sidney Teplin, Stanley Rosensweig, Robert L. Wolfson, Warren K. Montouri, and S & L Management Company, Inc. (Dreyfuss) appeal the court's decision to limit their award to $2,120,000. For the reasons hereinafter appearing, we affirm the judgment of the District Court in No. 80–1538, and reverse and remand in No. 80–1574.

I

Through a complicated chain of title, NPBC acquired title to the two properties here at issue, the Munsey Building and the National Theater, located in the District of Columbia.[1] By deeds dated May 23, 1963, Arnold Gottlieb and Wolfe R. Charney, as trustees, conveyed to Massachusetts Mutual Life Insurance Company title to the land underlying the two buildings. By a third deed bearing the same date, Gottlieb and Charney conveyed title to the Improvements to E Street Corporation. By a lease likewise dated May 23, 1963, Massachusetts Mutual leased its interest in the land to E Street Corporation. The latter then conveyed its interest in the Improvements to Jerry Wolman and Earl M. Foreman, as trustees. Dreyfuss is their successor in interest. Subsequently, Bankers Life Insurance Company succeeded in interest to Massachusetts Mutual as owner and lessor of the land. In January, 1979, NPBC purchased the interest of Bankers Life for $3,800,000, based on a contract of sale made in September, 1977. Thus, as of the time condemnation occurred, NPBC was the fee owner of the land involved, subject to a lease of such land to Dreyfuss, which also owned the buildings.

The lease in question is an elaborate document providing for a minimum thirty-year term at a fixed rental payment of $259,875 per year. After the initial term, the lessee may opt for six ten-year renewal periods, at an annual rental of 6.75 percent of the market value of the property at that time, not to go below $259,875. The lease also contains a provision indicating the agreed method of allocation of the proceeds of any condemnation award in the event of a total taking of the property.[2]

On April 13, 1979, the Pennsylvania Avenue Development Corporation (PADC), a corporation created by Act of Congress, commenced condemnation proceedings against the property in question. PADC, NPBC and Dreyfuss had previously entered into a contract by which PADC would acquire the property for $7,250,000. The parties agreed that PADC would institute condemnation proceedings to determine the appropriate division of the agreed award, which PADC deposited with the court. By consent of the parties, $3,850,000 was disbursed to NPBC, the lease having clearly provided that NPBC's portion of the award was not to be less than that amount.

On December 21, 1979, the District Court issued a Memorandum Opinion denying NPBC's motion to allocate the entire award to itself and holding that Dreyfuss would be permitted to present evidence at trial as to the value of its leasehold interest. Trial began on February 13, 1980, with NBPC maintaining alternative positions, i.e., that it was entitled to the entire award or, if not, that it was entitled to a substantial portion of the remaining award money. Dreyfuss claimed a significant portion of the award for itself. On April 18, 1980, the court filed an Order accompanied by a Memorandum Opinion again denying NPBC's request for an award of all of the remaining funds and awarding $5,130,000 (including the original $3,850,000) to NPBC, and the remaining $2,120,000 to Dreyfuss. Both sides appealed, each seeking a larger share of the award.

---

1. The properties in question are located at Thirteenth and E Streets, N.W., in the District of Columbia. They constitute a portion of Lot 3 and the entirety of Lots 4, 5 and 6 (now Lots 804 and 805) of Square 254.

2. The provisions of the lease are discussed in greater depth in part III of this opinion.

## II

In construing a contract, the task of the District Court is to determine the intention of the parties to it. "It is an elementary principle of contract interpretation that the plain and unambiguous meaning of a written agreement is controlling, in the absence of some clear evidence indicating a contrary intention." *Vogel v. Tenneco Oil Company*, 465 F.2d 563, 565 (D.C.Cir. 1972). Generally, the interpretation of a contract is a question of law for the courts and, unless the trial court is forced to turn to extrinsic evidence, appellate courts are not limited to review under the "clearly erroneous" standard made applicable to questions of fact by Fed.R.Civ.P. 52(a). *Washington Metropolitan Area Transit Authority v. Mergentime Corp.*, 626 F.2d 959, 961 (D.C.Cir.1980).

If there is a prior agreement between the parties as to allocation of a condemnation award, that agreement, of course, governs the disposition of the award. Where a lease in condemnation is silent as to the tenant's rights, the tenant has a right to prove his damages in the condemnation proceeding inasmuch as a term-of-years leasehold constitutes a possessory interest in the fee. Goldstein, *Leasehold Damages in New York City*, in S. Searles, A Practical Guide to the Legal and Appraisal Aspects of Condemnation 139, 140 (1969); Hershman, *Eminent Domain: Current Concepts and Practical Problems*, in S. Searles, *supra*, 3, 11–12.

Under most leases, allocation of the award between lessor and lessee is not problematical because "leases generally include a clause which makes them terminate in case of condemnation. This is sufficient to bar the award. It is unnecessary to state expressly that the tenant is to have no compensation for his term." Friedman on Leases 510–11 (1974). Courts have, however, looked with disfavor upon clauses resulting in forfeiture of the lessee's entire interest upon condemnation and, where possible, have construed such provisions to avoid this harsh effect. 2 Nichols, Eminent Domain § 5.23[2] at 5–94 (3d rev. ed. 1980).

*See In re Condemnation*, 38 Pa.Commw.Ct. 535, 394 A.2d 657 (1978).

For example, in *United States v. Right to Use and Occupy 3.38 Acres of Land*, 484 F.2d 1140 (4th Cir. 1973), the lease in question provided:

If the entire leased premises shall be taken for any public or quasi-public use under any statute or by the right of eminent domain ... then all obligations of the LESSEE under this lease shall cease and terminate as of the date on which the LESSEE surrenders, or is deprived of, the physical possession and occupation of said demised premises....

*Id.* at 1143 n.3. Although the Fourth Circuit indicated that "[s]uch a clause effectively terminates the tenancy," *id.* at 1144, it allowed the lessee to recover the bonus value of the lease based on the lessee's reservation in the lease of the "right to file and prosecute its claims against [the] taking authority for damages resulting from such taking." *Id.* at 1143 n.3.

Likewise, in *Wayne Co. v. Newo, Inc.*, 75 N.J.Super. 100, 182 A.2d 369 (App.Div.1962), the lease combined a termination clause with a clause providing for the apportionment of the damages between lessor and lessee according to their respective interests and the damages sustained by them. The court read the clauses together to permit the tenant to recover the bonus value of the lease. *See also Maxey v. Redevelopment Authority of Raine*, 94 Wis.2d 375, 288 N.W.2d 794 (1980).

Consequently, unless it is clear that the parties intended to extirpate the interest of the lessee in the event of a condemnation, the court is to construe the lease so as to prevent forfeiture. *Cf. Burkhart v. United States*, 227 F.2d 659, 662 (9th Cir. 1955) (lease "should not be construed against the tenants unless it is found without doubt intended to divest them of every vestige of interest in the realty taken").

If the court decides that the tenant did not, by virtue of the condemnation clause, relinquish its interest in the leasehold, it must then determine the measure of

damages owing the tenant. Again, the words of the parties govern.

Determination of the value of the condemned property is a question of fact for the District Court. On review, an appellate court must uphold that finding unless it is clearly erroneous. *Dayton Board of Education v. Brinkman*, 443 U.S. 526, 534–35 n.8, 99 S.Ct. 2971, 2977–78 n.8, 61 L.Ed.2d 720 (1979). In the context of a condemnation, valuation is clearly erroneous when it is unsupported by competent evidence in the record. *United States v. 3727.91 Acres of Land*, 563 F.2d 357, 362 (8th Cir. 1977). *See United States v. Whitehurst*, 337 F.2d 765, 776 (4th Cir. 1964).

The usual approach for valuing real property utilizes sales of the same or similar property in a market that guarantees comparable data to buyers and sellers. When the property in question is encumbered by a lease, this traditional method is frequently ineffective in predicting value:

> Leases commonly are not assignable without the consent of the landlord, and are so infrequently sold, and vary so much in length of term, rent reserved and other particulars as well as in the character of the property, that it is almost impossible to apply the customary tests of market value to a leasehold interest.

4 Nichols on Eminent Domain § 12.42[3] at 12–824 (3d rev. ed. 1980). Despite this difficulty, it is possible to value real property encumbered by a lease using other methods. For example,

> [i]n a long-term lease (say ninety-nine years) on which the danger of default is negligible, the landlord's entire interest in the property can be valued by treating it as a mere secured right to a permanent annuity, the amount of the annuity being measured by the net rentals.

1 Orgel, Valuation under Eminent Domain § 122 (2d ed. 1953).

Regardless of the method used in valuing a piece of property encumbered by

a long-term fixed rental lease, it is clear that appreciation in value of other comparable properties will not accrue to the benefit of the lessor of the property (and in fact renders the lessor's interest relatively less valuable [3]) until the termination of the lease or, at least, recomputation of the rental payments based on that appreciation.

### III

In the action before us, the District Court determined that Dreyfuss, the lessee, had not by way of the condemnation clause in the lease forfeited its entire interest in the condemnation award. Rather, the court determined that because of the ambiguity in the lease, Dreyfuss would not be held to a forfeiture. The relevant paragraphs in the lease [4] provide that

> If, during the term of this Lease or any renewal term, the entire Demised Premises and Improvements shall be taken as a result of the exercise of the power of eminent domain, ... this lease and all right, title and interest of Lessee hereunder shall cease and come to an end on the date possession of the Property is taken by the condemning authority....

Ex.App. at 190.

> The parties hereto shall request that in the proceeding there be a separate determination of the value of the Demised Premises considered as vacant and unimproved land plus the value of the interest of Lessor in the Improvements on the one hand, and the value of Lessee's leasehold estate including its interest in the Improvements on the other.

Ex.App. at 191–92.

Lessor argues that "Demised Premises," which is defined by the lease as "the right, title and interest of Lessor, acquired by Lessor by two deeds of even date herewith ... in the land described in Article II section 2.01," Ex.App. at 150, must include the "full and unencumbered interest in the land," that is, the value of the land as

---

**3.** *Cf. Alamo Land & Cattle Co. v. Arizona*, 424 U.S. 295, 304, 96 S.Ct. 910, 916, 47 L.Ed.2d 1 (1976) (leasehold interest is compensable when the capitalized fair rental value exceeds the capitalized value of the actual rental).

**4.** The relevant section of the lease, section 17.-01, appears in full as an appendix to this opinion.

unencumbered by the lease. Appellant's Br. in 80–1538 at 21. Appellant then relies on the first paragraph quoted above in contending that the leasehold interest and every other interest of the lessee in the land was extinguished by the condemnation award. The right reserved to the lessee in the second quoted paragraph consists only of a right to compensation for its improvements, appellant argues, reading the word "including" as a word of exclusivity.

Appellee, on the other hand, suggests the illogic of this construction:

> NPBC's interpretation would render the remaining portion of the sentence meaningless and nugatory. Only the land was leased (the Improvements were owned by the long-term lessees). If this land is to be valued upon condemnation "as though unencumbered" by the Lease, as urged by NPBC, the leasehold estate would be defined out of existence.

Appellee's Br. in 80–1538 at 7. Appellee proposes that the result intended by the signatories to the lease was for the lessor to receive upon condemnation the value of the property as encumbered by the lease while the lessee was to receive the bonus value of the lease. Each would receive the value of its own interest in the improvements.

The District Court, conceding some ambiguity in the language of the lease, held that Dreyfuss did not forfeit its interest in the condemnation award. We agree. Although both appellant and appellee suggest plausible constructions of the lease, in the absence of a clear statement we must hold that Dreyfuss retained the right to a portion of the condemnation award. Consequently, we affirm the judgment of the District Court in No. 80–1538.

▮ Upon concluding that Dreyfuss was entitled to a portion of the condemnation award, the District Court properly turned to the question of the value of that portion. The lease is clear in providing that the lessor is to receive the greater of $3,850,000 and the amount of the award "representing compensation for the value of the Demised Premises, considered as vacant and unimproved land, plus the value of the Lessor's interest in the Improvements." Ex.App. at

191. In ascertaining the latter, the District Court determined the value of the property at the time NPBC's contract of sale was drawn, and added to that value the percentage increase in the real property since that time, measured by reference to the increase in area property values between 1977, the date of the contract, and 1979, the date of condemnation.

As noted above, where property is encumbered by a fixed long-term lease as in the instant case, an increase in the value of local property not likewise encumbered does not imply an accretion in value of the lessor's interest. The experts testifying before the District Court recognized this consideration. For example, Mr. Harps, called by NPBC, testified as follows:

RECROSS–EXAMINATION

BY MR. FINEMAN:

Q Mr. Harps, you have indicated a 30 to 40 percent increase in value in the last 18 months, in your judgment?

A Yes. I am saying in price as indicated by market price.

Q Would that enure to the benefit of the leased fee holder immediately in this case?

A No.

J.A. at 338.

Mr. Reynolds, called by Dreyfuss, estimated that the percent increase actually accruing to the benefit of NPBC was no more than three percent. J.A. at 358–60. Under the terms of Dreyfuss's lease, the rent would not have been recomputed to reflect any appreciation in the market value of the property for the entire original thirty-year term of the lease, which would have expired in 1993. At that point, if Dreyfuss had exercised its right to renew for six ten year segments, the rent would have been recomputed at a rate of 6.75 percent of the then market value of the land. Consequently, although we express no opinion as to the appropriate value of the land to NPBC, that being a question for the District Court, it is clear that the increase in value to NPBC must be less than the appreciation in a comparable property not encumbered by a long-term fixed-rental lease.

We reverse the judgment of the District Court to the contrary in No. 80–1574.

## IV

We affirm the judgment of the District Court in No. 80–1538 with respect to the entitlement of appellee Dreyfuss to a portion of the condemnation award. We reverse the judgment of the court in No. 80–1574 with respect to the computation of Dreyfuss's portion, and remand for reallocation of the award in accord with the principles set forth in this opinion.

*It is so ordered.*

## APPENDIX

### ARTICLE XVII.

#### Condemnation

Section 17.01. Total Taking. If, during the term of this lease or any renewal term, the entire Demised Premises and Improvements shall be taken as a result of the exercise of the power of eminent domain (hereinafter referred to as the "proceeding") or if in lieu of condemnation by agreement between Lessor, Lessee and those authorized to exercise such right (hereinafter referred to in this Article as the "agreement"), the Demised Premises and Improvements are conveyed to the condemning authority, this lease and all right, title and interest of Lessee hereunder shall cease and come to an end on the date possession of the Property is taken by the condemning authority pursuant to such proceeding or agreement. In that event, the rent, imposition or other charges herein provided to be paid by Lessee shall be apportioned to date possession is taken and paid by Lessee to Lessor. Notwithstanding any statute or rule of law to the contrary, Lessor shall be entitled to receive the total proceeds of the award made in such proceeding or the consideration paid or payable pursuant to such agreement (hereinafter collectively or separately referred to as the "award"). The term "net award" shall mean the total award less all costs, expenses and attorneys' fees incurred in the collection thereof. Lessee hereby irrevocably assigns to Lessor all Lessee's right, title and interest in and to the award which, when received, shall be held by Lessor and distributed, paid, and applied as in this Article provided. Lessor shall receive and receipt for all such award monies, including any share ultimately determined to be due Lessee. Lesee [sic] and any fee or leasehold mortgagee, in cooperation with Lessor, shall have the right to participate in negotiations, the proceeding or any agreement leading to an award to protect their respective interests hereunder. With respect to any award, Lessor shall have the right to receive, retain and to be paid whichever is the greater of the following:

(a) Out of the net award the amount representing compensation for the value of the Demised Premises, considered as vacant and unimproved land, plus the value of Lessor's interest in the Improvements; or

(b) The sum of Three Million Eight Hundred Fifty Thousand ($3,850,000) Dollars, representing Lessor's original investment in the Demised Premises. If the net award is less than Three Million Eight Hundred Fifty Thousand ($3,850,000) Dollars, Lessee agrees to pay Lessor the amount of the deficiency so that Lessor shall receive the full sum of Three Million Eight Hundred Fifty Thousand ($3,850,000) Dollars without deductions.

The balance of the award, after deducting Lessor's share as set forth in (a) or (b) above, shall represent the value of Lessee's interest hereunder, including its interest in the Improvements, and shall be disbursed as follows: (1) Any leasehold mortgagee shall have the right to receive the balance due it of unpaid principal and interest under its mortgage, deed of trust or other security instrument; and (2) the balance of said award shall be paid to Lessee. The parties hereto shall request that in the proceeding there be a separate determination of the value of the Demised Premises considered as vacant and unimproved land plus the value of the interest of Lessor in the Improvements on the one hand, and the value of Lessee's leasehold estate including its interest in the Improvements on the other. Any determination so made shall be binding and conclusive upon the parties. If for any reason such values are not separately deter-

mined in the proceeding, then such values shall be fixed by agreement between Lessor and Lessee or by arbitration pursuant to Article "Arbitration" of this lease. The value of Lessor's interest in the Improvements shall be determined by taking the portion of the award representing the value of the Improvements and multiplying it by a fraction, the numerator of which shall be the portion of the lease term, including any renewal term, which has expired at the date of condemnation or conveyance and the denominator of which shall be the entire term of the lease, including any renewal term, and the remaining value of the Improvements shall represent the Lessee's interest therein. The payor of the award shall not be under any obligation to see to the application of the award proceeds and the payor is expressly released from liability to Lessee or any leasehold mortgagee upon paying the award to Lessor.