58 Pa. Commonwealth Ct. 321 (1981)
In Re: Condemnation by the Township of Heidelberg for Footpath, Alleyway and Bridge Purposes, etc.
Donald K. Speicher and Martha M. Speicher, his wife, Appellants.
In Re: Condemnation by the Township of Heidelberg for Footpath, Alleyway and Bridge Purposes, etc.
Harry Z. Fry and Hilda M. Fry, his wife, Appellants.
Nos. 62 and 79 C.D. 1980.
Commonwealth Court of Pennsylvania.
Argued February 5, 1981.
April 15, 1981.
*322 Argued February 5, 1981, before Judges BLATT, MacPHAIL and WILLIAMS, JR., sitting as a panel of three.
*323 Raymond C. Schlegel, Balmer, Mogel, Speidel & Roland, for appellants, Donald K. Speicher and Martha M. Speicher, his wife.
Scott D. Keller, with him John A. Hoffert, Jr., Matten & Cottom, for appellants, Harry Z. Fry and Hilda M. Fry, his wife.
Scott L. Huyett, for appellee, Township of Heidelberg.
OPINION BY JUDGE MacPHAIL, April 15, 1981:
This is an appeal from an order of the Court of Common Pleas of Berks County dismissing the preliminary objections of Harry Z. Fry, Hilda M. Fry, his wife, Donald K. Speicher and Martha M. Speicher, his wife, (collectively, Condemnees) to the declaration of taking filed by the condemnor Township of Heidelberg.
In February, 1978, the Township of Heidelberg (Township), a second class township, filed a declaration of taking to acquire land for the purpose of constructing thereon a footpath and/or alleyway and bridge, for use by school children walking from the Fry Manor residential development to the Conrad Weiser School Complex. At present, the children must travel along the berm of U.S. Route 422, a busy highway, to reach the school.[1] The proposed footpath and/or alleyway would route the children in another direction  across property at the end of Lynn Street in the Fry Manor development, across a bridge over the Furnace Creek, and across land on the other side *324 leading up to the School District's property. The Township proposes to condemn a strip of land, approximately 132 feet by 54 feet, belonging to the Speichers who live on the Fry Manor side of the creek. It also proposes to acquire a strip, approximately 30 feet by 152 feet, owned by the Frys who live on the school side of the creek.
The condemnor Township's initial condemnation resolution referred to a taking of an easement or right of way over the Condemnees' property, whereas its declaration of taking referred to the taking of a fee simple interest. The Court allowed the Township to amend the language in its resolution to conform to that in its declaration of taking.
On appeal, the Condemnees argue that the lower court erred in dismissing their preliminary objections for the following reasons:
1) The condemnor Township had no express or implied power to condemn Condemnees' property to construct a footpath for school children and the public.
2) The Township improperly initiated the condemnation proceedings without making any cost or feasibility studies centering on the proposed location for the footpath and bridge.
3) The condemnation for a footpath having a width up to 54 feet is excessive.
4) The condemnation for a new footpath is arbitrary, capricious, and an abuse of discretion.
5) The initial condemnation resolution which referred to a taking of an easement or right of way is ineffective to condemn a fee simple interest.
In examining the lower court's decision and the record, we must remember that in eminent domain cases our scope of review "is limited to a determination *325 of whether the court abused its discretion or committed an error of law." Pidstawski v. South Whitehall Township, 33 Pa. Commonwealth Ct. 162, 166, 380 A.2d 1322, 1324 (1977). "It is not for this Court to determine whether or not we would have reached the same conclusions, but rather whether or not the record contains sufficient competent evidence to support the conclusions of the court below." Riehl v. Millcreek Township Sewer Authority, 26 Pa. Commonwealth Ct. 70, 72, 362 A.2d 478, 479 (1976).
Addressing the Condemnees' last issue first, we hold that the lower court correctly determined that the Township as condemnor was not precluded from taking a fee simple interest in Condemnees' property, because of an inadvertent reference to an easement or right of way in its condemnation resolution. We agree that the fee simple interest was intended, as manifested in the declaration of taking. Under Section 406(e) of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, as amended, 26 P.S. § 1-406(e),[2] the lower court properly allowed the Township to cure its technical error by amending its resolution to conform to the declaration of taking.
Whether the Township possessed the power to condemn for a footpath and/or alleyway[3] is the threshold issue of this case; for without that authority no condemnation can take place. Winger v. Aires, 371 Pa. 242, 89 A.2d 521 (1952). While the lower court failed to address the issue of whether the Township had the authority to condemn for an alleyway, it did hold that the legislature intended to grant to second class townships *326 the right and authority to condemn land for the purpose of establishing a footpath. This power, the lower court found, was implied within The Second Class Township Code (Code), Act of May 1, 1933, P.L. 103, as amended, 53 P.S. § 65101 et seq.
"It is well established that the exercise of the power of eminent domain is necessarily in derogation of the right to hold property and that the authority to exercise that power should be strictly construed." Golding Condemnation Case, 33 Pa. Commonwealth Ct. 635, 638, 382 A.2d 509, 511 (1978). A municipal corporation, such as this second class Township, "possesses only those powers granted in express words, and those necessarily or fairly implied or incident to the powers expressly granted." Id. at 639, 382 A.2d at 511.
We agree with the lower court that, although the power is not expressly granted, the authority to condemn for a footpath is fairly implied from the following sections of the Code. Section 702 of the Code, added by Section 9 of the Act of July 10, 1947, P.L. 1481, as amended, gives second class townships the power:
To provide for and expend moneys from the general fund of the township for the construction and maintenance of sidewalks and footpaths, whenever deemed necessary, for the protection of the traveling public.
53 P.S. § 65738.
Section 1404 of the Code, added by Section 30 of the Act of July 10, 1947, P.L. 1481, as amended, provides:
Whenever it shall appear to the supervisors that any part or portion of any road or highway is dangerous to the traveling public and such danger could be materially reduced or lessened by the construction of a sidewalk or footpath, the supervisors shall have the right to lay out *327 and construct a sidewalk or foothpath along such dangerous portion of said road or highway of such materials as they shall deem advisable, and to expend moneys from the general fund of the township therefor. In case the highway is a State or county highway, the written consent of the Department of Highways or the county commissioners, as the case may be, shall first be obtained.
53 P.S. § 66404.
By its express grant of the above powers, the legislature necessarily implied a grant of the power to condemn for sidewalks and footpaths because such power often is needed to fulfill the Township's specifically authorized purposes. In this case, the Township deems construction of a footpath "necessary for the protection of the traveling public," because at present school children walking from Fry Manor to the school must walk along a dangerous highway. Because the Condemnees refuse an allegedly reasonable sale price for their properties, the Township has no choice but to condemn the property for its valid purpose.
The fact that the footpath would not be constructed "along such dangerous portion of said road or highway" does not destroy the Township's power to condemn. Establishing the proposed footpath would reduce the current danger to the traveling public's safety, equally as well as would the construction of a path along the highway. Furthermore, we doubt that the legislature intended the above phrase in Section 1404 of the Code, which is not found within Section 702 of the Code, to act as a restriction on the location of the footpath. Since the Township certainly can condemn private property abutting the highway right of way for a footpath, we find that the Township can condemn Condemnees' property in a residential *328 development for the same purpose. We note that in some instances construction of a footpath along a highway would be physically impossible, necessitating construction elsewhere.
Although the lower court neglected to address the question of whether the Township has power to condemn for an alleyway, we do not hesitate to hold that the Township has the requisite authority to do so. A second class township undeniably has the power to condemn for the opening of roads, under Article XI of the Code, 53 P.S. §§ 66101-66185, and under Section 13 of the General Municipal Law.[4] The Code defines "Road" or "Public Road" as "a road of a township of the second class and shall include a street, lane, alley, court or public square of such township." (Emphasis added.) Accordingly, we hold that the Township's power to condemn for a road necessarily includes the power to condemn for an alleyway.
The remaining three issues raise the question of whether, if the Township possesses the power to condemn, its condemnation here was arbitrary, capricious or an abuse of discretion. Courts cannot interfere with the exercise of the power of eminent domain by an entity possessing such power, in the absence of proof of fraud, collusion, bad faith or arbitrary action equating an abuse of discretion. Weber v. Philadelphia, 437 Pa. 179, 262 A.2d 297 (1970); Hatfield Township Appeal, 28 Pa. Commonwealth Ct. 109, 367 A.2d *329 747 (1977). Because there is a strong presumption that the municipality has acted properly, the burden is heavy upon one attempting to show bad faith or an abuse of discretion. Pidstawski, supra.
The lower court properly ruled that the Condemnees failed to prove that the Township acted in bad faith or abused its discretion, when it chose Condemnees' property for the location of a new footpath. Mere evidence that the decision was unwise, e.g., because a five foot strip of land already was available for a footpath in the same vicinity, will not warrant us setting aside the Township's selection of a proposed location. In this instance we cannot substitute our judicial discretion for the Township's administrative discretion, Weber, supra, for location of the site is a matter exclusively within a township's power. Blank v. Columbia Gas of Pennsylvania, Inc., 11 Pa. Commonwealth Ct. 304, 314 A.2d 880 (1974).
Neither have Condemnees proved that the Township's decision to condemn their land was so premature as to constitute an abuse of discretion. They point to no statutory requirements for cost or feasibility studies that must be met prior to a taking, and we can find no statutory requirements for prior studies. The proposed new route was surveyed and, in view of the unique nature of the problem, was a matter with which the supervisors had obviously wrestled for some time. Their personal knowledge of the problem, including topographic features, must be given great weight. The evidence in the record before us is not sufficient by itself to sustain the Condemnees' burden of proof in this respect.
Finally, the Condemnees claim that the Township abused its discretion because the taking is excessive. Our Supreme Court has stated that the quantum of land acquired is, within reasonable limitations, a matter entirely within the condemnor's discretion and *330 that the condemnor may consider future as well as existing necessities. Truitt v. Borough of Ambridge Water Authority, 389 Pa. 429, 133 A.2d 797 (1957). The trial court held here that a taking of land of a width varying from 54 feet to 30 feet was not so excessive for a footpath as to constitute an abuse of discretion in view of the Township's authority to condemn for future necessity. We note, however, that our Supreme Court cautioned that condemnation for future necessity was permissible "only to the extent that such land may become necessary in good faith for future use within reasonable time." Id. at 432, 133 A.2d at 798. In view of the fact that the Township once considered a footpath five feet in width adequate for a footpath, we believe that a width six to ten times greater for the same purpose is excessive and an abuse of the Township's discretion.
There remains for our determination, however, a question not addressed by the trial court and that is whether the taking was excessive for an alleyway inasmuch as the taking here was for a footpath and/or an alleyway. The Code sets forth specific requirements for the widths of public roads; these standards give us guidance in deciding this issue. Section 1103 of the Code, added by the Act of July 10, 1947, P.L. 1481, as amended, provides:
The width of a public road in townships of the second class shall not be less than thirty-three feet or more than one hundred and twenty feet: Provided, that when the public road desired to be opened is in a built up section of any township of the second class, of the type commonly known as an alley, and is not an integral part of a through route, the minimum width may be fifteen feet: And, provided, That the limits of width shall not be construed to include the width required for necessary slopes in cuts *331 or fills, when the limits of the road and the extra width required for such slopes exceed the limits of width herein specified.
53 P.S. § 66103.
In the instant case, the Township does plan to open in Fry Manor a public road commonly known as an alley, which at this time will not be an integral part of any through route. According to the above section, the minimum width of a proposed alley must be fifteen feet. Section 1103 of the Code does not state a maximum width for an alley. From the requirement that a major road shall be at the minimum thirty-three feet, we draw the logical conclusion that the width of an alley is intended to be somewhere between fifteen and thirty-three feet.
Clearly then, the Township's taking of a strip of land approximately 54 feet in width, from the Speichers) for an alley was excessive, as a matter of law.[5] The lower court must decide the extent of that excess. As we have noted, the land to be taken from the Frys was approximately 30 feet in width; it is for the trial court to determine whether that amount of land was excessive for an alley and, if excessive, the extent of the excess.
In sum, we remand to the lower court for a determination of what constitutes the maximum amount of land that can be acquired by the Township, in the lawful exercise of its discretion for its stated purposes. In all other respects, we affirm the order of the trial court dismissing the preliminary objections.

ORDER
AND NOW, this 15th day of April, 1981, the order of the Court of Common Pleas of Berks County, dated *332 December 19, 1979, is reversed and remanded as to the dismissal of the preliminary objection which raised the issue of whether the taking was excessive. In all other respects, the order is affirmed.
Judge WILKINSON, JR. did not participate in the decision in this case.
Judge WILLIAMS, JR. concurs in result only.
NOTES
[1] The Condemnees point out that sometime prior to the instant proceedings a walkway five feet in width had been deeded to the Township for this purpose but that a temporary bridge over the creek which connected the walkway was removed by the School District thus rendering that walkway unusable.
[2] 26 P.S. § 1-406(e) provides in pertinent part:

The court may allow amendment or direct the filing of a more specific declaration of taking.
[3] Whether the Township had power to construct the bridge over the creek is not in issue here. Presumably, the creek was not property of either condemnee.
[4] Act of May 23, 1874, P.L. 230, as amended, repealed as to third class cities by the Act of June 23, 1931, P.L. 932, as amended, 53 P.S. § 1671, provides:

That the municipal authorities and courts having jurisdiction in any city of this commonwealth shall have exclusive control and direction of the opening, widening, narrowing, vacating and changing grades of all streets, alleys, and highways within the limits of such city, and may open or widen streets, at such points, and of such width, as may be deemed necessary by such city authorities and courts. . . .
[5] The Township cannot condemn for a full fledged public road (minimum width of thirty-three feet) in this case, for it was not a stated purpose in its resolution and declaration of taking.