In re CONDEMNATION by the City of Coatesville OF CERTAIN PROPERTIES AND PROPERTY INTERESTS FOR USE AS a PUBLIC GOLF COURSE and Related Facilities and for Other Recreational Purposes.

Property 123 Mount Airy Road, Coatesville, PA 19320, Tax Parcel No. 38–2–29.1, (Valley Township) and Tax Parcel No. 28–9–91 (West Caln Township).

Appeal of the City of Coatesville.

Condemnation by the City of Coatesville of Certain Properties and Property Interests for Use as a Public Golf Course and Related Facilities and for Other Recreational Purposes.

Property 123 Mount Airy Road, Coatesville, PA 19320 Tax Parcel No. 38–2–29.1 (Valley Township) and Tax Parcel No. 28–9–91 (West Caln Township) Richard A. Saha and Nancy K. Saha, h/w.

Appeal of Richard A. Saha and Nancy K. Saha.

Commonwealth Court of Pennsylvania.

Argued Nov. 6, 2002.
Decided April 7, 2003.
Reargument En Banc Denied May 29, 2003.

Herbert Bass, Philadelphia and John S. Carnes, Jr., West Chester, for appellant, The City of Coatesville.

Scott Yaw, Malvern, for appellee, Saha.

BEFORE: PELLEGRINI, Judge, and SIMPSON, Judge, and MIRARCHI, JR., Senior Judge.

OPINION BY Judge PELLEGRINI.[1]

Before us are the cross-appeals of the City of Coatesville (City) and Richard A. Saha and Nancy K. Saha (Condemnees) from an order of the Court of Common Pleas of Chester County (trial court) sustaining in part and overruling in part Condemnees' preliminary objections to the City's declarations of taking under the Eminent Domain Code.[2]

On August 2, 2000, the City filed a declaration of taking exercising its power of eminent domain "for the purposes of creating and establishing a public golf course and related facilities and other recreational uses comprising a regional family recreational complex[.]" Pursuant to that declaration, the City sought to condemn a 47.5–acre parcel belonging to Condemnees located outside of the City at 123 Mount Airy Road in Valley Township. The City excluded a six-acre parcel and a non-exclusive right-of-way connecting the six-acre parcel with Mount Airy Road from the property it sought to condemn.

In response to the declaration of taking, Condemnees filed 28 preliminary objections alleging, *inter alia,* that the Third Class City Code[3] did not authorize the taking of land by eminent domain for a golf course, the proposed use was not for a public purpose, the plans presented by the City indicated that only nine acres of Con-

---

1. This case was reassigned to the author on March 3, 2003.

2. Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §§ 1–101–1–903.

3. Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. §§ 35101–39701.

848

demnees' property would be used, and the property was located outside of the City.[4] Subsequently, the City filed an amended declaration of taking seeking to amend the purpose of the condemnation to the creation of "a public golf course and golf-related facilities." Condemnees then filed a motion to strike the City's amended declaration of taking contending that the Eminent Domain Code provided no authority for such a filing in this case, the City had not obtained leave of court to file the amended declaration, and City Council had taken no official action which authorized the filing.

■ Following an evidentiary hearing and oral argument,[5] the trial court entered the following order:

> AND NOW, this 11th day of January, 2002, the preliminary objections interposed by Richard A. and Nancy K. Saha as Condemnees pursuant to Section 406 of the Eminent Domain Code, 26 P.S. § 1–406 to the declaration of taking filed by the City of Coatesville as Condemnor on August 2, 2000 and amended by filing of February 13, 2001 are SUSTAINED–IN–PART and OVERRULED IN PART. Specifically, the Condemnees' Motion to Strike the amended declaration of taking filed on or about February 13, 2001 is hereby GRANTED. The Condemnees' preliminary objection challenging the adequacy of the statement of purpose contained in the declaration of

taking filed on or about August 2, 2000 is SUSTAINED with leave and direction to the City to amend the said declaration so as to specify that the purpose for which the Condemnees' lands have been taken is limited to and those lands shall be used for nothing other than as and for a municipal golf course, a component thereof, or a facility directly ancillary thereto such as a golf training facility under the auspices of and as a member of The First Tee National Association; an initiative of the World Golf Foundation dedicated to providing affordable access to golf especially to youth of limited financial means. The said Amendment shall be included in the amended filing described immediately below.

> The Condemnees' preliminary objection challenging the informational basis for and the rationality of the creation of Exception Tract # 1 for retention by the Condemnees, is SUSTAINED with leave and direction to the City to amend the said declaration so that the tract excepted therefrom for retention by the Condemnees conforms to an application for subdivision approved by the governing body of Valley Township. Without limiting the foregoing, and absent relief granted by the Valley Township Zoning Hearing Board or an amendment of the applicable design regulations, the excepted tract shall provide road frontage in compliance with Valley Township's

4. In a separate action, Valley Township filed a complaint in equity before the trial court seeking injunctive and declarative relief against the City, Condemnees and two other property owners whose land within the township the City had also condemned, alleging that the partial condemnations of those properties constituted subdivisions within Valley Township's subdivision and land development ordinance and the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11202. Alleging that Valley Town-

ship did not have standing to file the action, the trial court was without jurisdiction to hear the matter and Valley Township's complaint failed to conform to law, the City filed preliminary objections. Concluding that Valley Township had stated a justiciable claim, the trial court overruled the City's preliminary objections.

5. The record contains more than 2,000 pages of testimony from 23 witnesses and more than 6,000 pages of documentary exhibits.

subdivision design regulations and shall be of sufficient area so as to include the Condemnees' existing home, accessory buildings, water source, sub-surface sanitary sewage disposal facility, and so as to permit the housing thereon of up to three horses; all in conformance with the use and area and bulk and design regulations of Valley Township. Unless the time period is extended by this Court for good cause shown, the City's application for subdivision approval shall be submitted to Valley Township not later than sixty (60) days from the date hereof. The Amended declaration of taking shall be filed with this Court not later than the 10th day next following approval of the City's application for subdivision approval. In all other respects the Condemnees' preliminary objections are hereby OVERRULED.

(Trial Court's Order dated January 11, 2002.) These appeals followed.[6]

## I. APPEALABILITY

■ Though not raised by any of the parties, the trial court, in a supplemental opinion dated April 15, 2002,[7] urges this Court to quash the cross-appeals of the City and Condemnees because its January 11, 2002 order was not a final, appealable order. It maintains that because, by its terms, the order sustained in part and overruled in part Condemnees' preliminary objections and in each instance in which Condemnees' preliminary objections were sustained, the City was granted leave and was directed to file an amended declaration of taking thereby curing the defect identified in by the objection, neither party was put out of court and further proceedings were contemplated; and, therefore, an immediate appeal was not appropriate.

■ Preliminary objections in the context of eminent domain actions serve a different purpose than preliminary objections filed in other civil actions. *In re Condemnation of .036 Acres, More or Less, of Land Owned by Wexford Plaza Associates,* 674 A.2d 1204 (Pa.Cmwlth. 1996). Not only are the Rules of Civil Procedure not applicable to eminent domain proceedings, *Gilyard v. Redevelopment Authority of Philadelphia,* 780 A.2d 793 (Pa.Cmwlth.2001), but preliminary objections filed pursuant to Section 406 of the Eminent Domain Code[8] serve a very

---

6. Where a trial court has either sustained or overruled preliminary objections to a declaration of taking, our scope of review is limited to determining whether the trial court abused its discretion or committed an error of law. *In re Condemnation of 110 Washington Street, Borough of Conshohocken, Pennsylvania by Redevelopment Authority of County of Montgomery, for Urban Renewal Purposes,* 767 A.2d 1154 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 567 Pa. 748, 788 A.2d 379 (2001).

7. The trial court also filed a Further Supplemental Opinion dated May 13, 2002, in which it recited the City's actions since the filing of its January 11, 2002 opinion. It opined that the City's behavior supported its conclusion that the case must be returned to it for further proceedings.

8. Section 406 of the Eminent Domain Code, 26 P.S. § 1–406, provides:

(a) Within thirty days after being served with notice of condemnation, the condemnee may file preliminary objections to the declaration of taking. The court upon cause shown may extend the time for filing preliminary objections. Preliminary objections shall be limited to and shall be the exclusive method of challenging (1) the power or right of the condemnor to appropriate the condemned property unless the same has been previously adjudicated; (2) the sufficiency of the security; (3) any other procedure followed by the condemnor; or (4) the declaration of taking. Failure to raise these matters by preliminary objections shall constitute a waiver thereof.

(b) Preliminary objections shall state specifically the grounds relied upon.

different purpose than those filed under the Rules of Civil Procedure. In eminent domain cases, preliminary objections are intended as a procedure to resolve expeditiously the factual and legal challenges to a declaration of taking before the parties proceed to determine damages. *North Penn Water Authority v. A Certain Parcel of Land,* 168 Pa.Cmwlth. 477, 650 A.2d 1197 (1994). That does not mean that all matters relating to eminent domain preliminary objections are automatically appealable. For example, we held in *North Penn Water* that the dismissal of a single preliminary objection among many was not waived on appeal because its dismissal did not immediately need to be appealed until the other preliminary objections were resolved.

In this case, however, even though the trial court's January 11, 2002 order required further action by the City, that order resolved all outstanding preliminary objections, making it a final appealable order as a matter of right by either party. It was no less a final appealable order because it directed the City to take specific, affirmative action in order to overcome Condemnees' objections. In essence, it resolved any further objections Condemnees might raise to a second amended declaration of taking, and for all practical purposes, put them out of court making the order final and appealable. The direction

that the City file a subdivision application with Valley Township, in effect, determined that the procedure leading up to the declaration of taking was improper, making that portion of the Order also appealable by the City. Moreover, if the City followed the direction of the trial court in amending its declaration of taking, some of the issues raised by the parties on appeal would be rendered moot, and, therefore, would never be considered in any appeal. Because the trial court's January 11, 2002 order effectively placed the parties out of court as to the issues raised in Condemnees' preliminary objections, it was a final and appealable order, and the City's and Condemnees' cross-appeals are properly before us for review.

## II. THE CITY'S APPEAL

The City contends that the trial court erred in sustaining Condemnees' preliminary objections based on its conclusion that the City's partial condemnation of Condemnees' property was improper because the excepted parcel of property failed to conform to Valley Township's zoning and/or subdivision ordinances. Also, the size and location of the excepted parcel failed to comply with City Council's intent because Condemnees failed to raise those specific objections in their preliminary objections.[9]

(c) All preliminary objections shall be raised at one time and in one pleading. They may be inconsistent.
(d) The condemnee shall serve a copy of the preliminary objections on the condemnor within seventy-two hours after filing the same.
(e) The court shall determine promptly all preliminary objections and make such preliminary and final orders and decrees as justice shall require, including the revesting of title. If preliminary objections are finally sustained, which have the effect of finally terminating the condemnation, the condemnee shall be entitled to damages as if

the condemnation had been revoked under section 408, to be assessed as therein provided. If an issue of fact is raised, the court shall take evidence by depositions or otherwise. The court may allow amendment or direct the filing of a more specific declaration of taking.

9. Rather than refer to Condemnees' specific preliminary objection raising that issue, the trial court stated, "[w]e do not agree that the Condemnees have not here preserved the issue of whether the condemnation constitutes an illegal subdivision. In fact, the issue was raised, *inter alia,* in the Condemnees' written

■ As to whether Condemnees raised an objection to failure of the excepted parcel to conform to Valley Township land use ordinances, they filed 28 preliminary objections regarding the City's authority to condemn their property, including:

3. Paragraphs 1 through 7 and 12 of the Declaration of Taking are denied for the following reasons:

* * *

(i) The portion of Condemnees' Property that is the subject of the condemnation is located in Valley Township and West Caln Township, being outside the boundaries of the City of Coatesville.

(j) The portion of Condemnees' Property that is the subject of the condemnation is located in the R–1 district of Valley Township, covered by Section 203 of the Valley Township Zoning Ordinance, and the R–1 district of West Caln Township.

(k) The uses proposed by the Condemnor for portions of Condemnees' Property are not permitted in the zoning districts of Valley Township and West Caln Township, noted in the immediately preceding subparagraph.[10]

(l) Although the Condemnor repeatedly stated that it would not take the home of Condemnees, Condemnor has essentially isolated Condemnees' home by drawing a square completely around the Condemnees' so that it would be surrounded by the condemned property thereby isolating the Condemnees and their families, whose properties now adjoin the Condemnees' Property, from each other. These actions are in bad faith, an abuse of discretion, fraudulent, and not justifiable.

* * *

(t) In toto, the Condemnor's acts and omissions are: illegal, made in bad faith, fraudulent, an abuse of discretion, arbitrary, capricious, and unreasonable.

(Condemnees' Preliminary Objections at 4–5.)

Our review of Condemnees' preliminary objections fails to indicate any objection addressing the City's failure to ensure that the excepted parcel conform to the zoning and/or subdivision ordinances of Valley Township, and, therefore, that objection was waived. 26 P.S. § 1–406(a). Even if they may have raised that matter orally before the trial court or in their brief is of no moment. Section 406 of the Eminent Domain Code is very specific in that failure to raise challenges in the preliminary objections at one time results in a waiver of those challenges. See In re Land Owned by Wexford Plaza Assoc. Because Condemnees' challenge to the City's failure to comply with the Valley Township zoning and/or subdivision ordinances re-

and oral arguments as well as in the deposition of the consulting engineer, Russell Dunleavy and City Manager, Paul Janssen." (Trial Court's opinion dated January 11, 2002, at 75) (emphasis in the original), and "[t]he vagarious nature of the excepted parcel is an issue the Sahas have preserved and properly presented and the evidence and argument offered in its support, including that described above, requires that we sustain the objection." *Id.* at 87, 788 A.2d 379.

10. In its January 11, 2002 opinion, the trial court overruled Condemnees' preliminary objections contained in subparagraphs 3(i), (j) and (k) concluding that because condemnees, in an eminent domain proceeding, lack standing to object to a taking on the ground that there may be a future legal or factual objection to the proposed use, "[t]he issue of whether the regional family recreational complex will be, in whole or in part, violative of the regulations of the municipality in which it is located, may not be raised by the condemnees by preliminary objection." (Trial Court's opinion dated January 11, 2002, at 33.)

garding the excepted parcel was not raised, there was no preliminary objection to sustain.[11]

■ As to whether Condemnees properly raised an objection regarding the City's failure to adhere to City Council's intent for the excepted parcel, our review of Condemnees' preliminary objection fails to indicate any objection based upon a specific intent of City Council regarding the size and location of the excepted parcel.[12] While subparagraph 3(*l*) of Condemnees' preliminary objections challenged the City's alleged isolation of their home after it had stated it would not take their home, that objection does not address City Council's intent as to the location and size of the excepted parcel and the City's derogation from that intent upon filing its declaration of taking. Moreover, as to the location of the excepted parcel, the precise location of the excepted parcel was determined based on the location of Condemnees' home, which was not taken under the City's declaration of taking.

Because Condemnees failed to specifically raise a challenge to the City's declaration of taking based on the City's failure to adhere to City Council's intent regarding the excepted parcel by way of preliminary objection, that challenge was waived. 26 P.S. § 1–406(a). For the foregoing reasons, the trial court erred in directing the City to amend its declaration of taking so that the excepted parcel conformed to the Valley Township's zoning and subdivision ordinances.

## III. CONDEMNEES' APPEAL

### A.

■ Condemnees contend that the trial court erred in allowing the City to file a second amended declaration of taking in

11. Although we conclude that Condemnees' challenge regarding whether the excepted parcel conformed to the Valley Township zoning and subdivision ordinances was not properly raised in their preliminary objections, and, therefore, was waived, we note that nothing in the Eminent Domain Code requires an entity to file a subdivision application either before or after a declaration of taking is filed. Section 402 of the Eminent Domain Code, 26 P.S. § 1–402, provides what an entity has to do to properly file a declaration of taking. As to the land to be taken, that section only requires that an entity provide:

[a] description of the property condemned sufficient for the identification thereof, specifying the city, borough, township, or town and county or counties wherein the property is taken is located, a reference to the place of recording in the office of the recorder of deeds of plans showing the property condemned or a statement that plans showing the property condemned are on the same day being lodged for record or filed in the office of the recorder of deeds in such county in accordance with section 404 of this act.

26 P.S. § 1–402(b)(5). Nothing in that section requires that a subdivision plan be filed. Moreover, once filed, the taking has occurred and compensation or estimated compensation is paid into court and title passes. If preliminary objections are filed, title still passes but not the right of possession until the preliminary objections are resolved. *In re Condemnation by Commonwealth, Department of Transportation of Right of Way for Legislative Route 1084*, 38 Pa.Cmwlth. 535, 394 A.2d 657 (1978). If we were to hold that a subdivision application must be filed, we would be engrafting a requirement on the procedure that the General Assembly did not to make a taking effective.

12. While not referred to in its January 11, 2002 opinion in which the trial court sustained certain preliminary objections filed by Condemnees, in footnote 50 of its supplemental opinion filed on April 15, 2002, the trial court cites to subparagraphs 3(*l*) and 3(t) of Condemnees' preliminary objections to conclude that "[t]here can be no dispute that [the issue regarding City Council's intent as to the excepted parcel] was raised by the Condemnees in their preliminary objections." (Supplement Opinion filed April 15, 2002, at 17.)

order to specify the purpose for which their land had been taken be limited to a municipal golf course, a component thereof or a facility directly ancillary thereto, because nothing in the Eminent Domain Code provides such relief. They argue that because the proposed amendment was not for the correction of a technical error, the City's declaration of taking should have been stricken, and the trial court should have ordered title to the property be revested in them.

Section 406(e) of the Eminent Domain Code provides that a court may allow an amendment or direct the filing of a declaration of taking, stating:

The court shall determine promptly all preliminary objections and make such preliminary and final orders and decrees as justice shall require, including the revesting of title. If preliminary objections are finally sustained, which have the effect of finally terminating the condemnation, the condemnee shall be entitled to damages as if the condemnation had been revoked under Section 408 to be assessed as therein provided. If an issue of act is raised, the court shall take evidence by depositions or otherwise. *The court may allow amendment or direct the filing of a more specific declaration of taking.*

26 P.S. § 1–406(e). (Emphasis added.)

Acknowledging that pursuant to Section 406(e) of the Eminent Domain Code, a trial court may allow the amendment of a declaration of taking, Condemnees argue that power is limited to amendments to cure a technical error in the original declaration of taking. In doing so, they rely on our

holding in *In Re Condemnation By the Township of Heidelberg,* 58 Pa.Cmwlth. 321, 428 A.2d 282 (1981).[13] In that case, the township filed a declaration of taking to acquire land for the purpose of constructing a footpath and/or alleyway and bridge for use by school children walking from a residential development to school. In its declaration of taking, the township proposed to condemn two strips of land. The township's initial condemnation resolution referred to a taking of an easement or right-of-way over the condemnees' property, whereas the declaration of taking referred to the taking of a fee simple interest. Concluding that the fee simple interest was intended, as stated in the declaration of taking, the trial court allowed the township to cure the error by amending its resolution to conform to the declaration of taking. On appeal, we held that the trial court did not err in allowing the township to amend the resolution because the fee simple interest was intended as manifested in the declaration of taking.

While we addressed Heidelberg Township's basis for seeking to amend its resolution to conform to its declaration of taking as a "technical error" in that it inadvertently referenced an easement or right-of-way rather than a fee simple interest in its resolution, there was no indication in that case that a court-directed amendment of a declaration of taking pursuant to Section 406(e) of the Eminent Domain Code was limited only to corrections of technical errors nor have we found any other authority to support such a limitation. Because nothing in Section 406(e) limits a court's authority to direct the amendment of or the filing of a

---

**13.** Condemnees also rely on our Supreme Court's decision in *In Re Approval of Bond of Peoples Natural Gas Company,* 399 Pa. 226, 160 A.2d 391 (1960), and this Court's decision in *Stitt v. Consolidation Gas Supply Corporation,* 3 Pa.Cmwlth. 482, 284 A.2d 313 (1972).

However, because those cases address a condemner's ability to amend its declaration of taking as of right rather than at the direction of a court following a hearing on preliminary objections as in this case, those holdings are not applicable here.

more specific declaration of taking, we cannot say that the trial court erred in directing the City to amend its declaration of taking to clarify the purpose for its taking.[14]

### B.

■ Condemnees also contend that the trial court erred in overruling their preliminary objection that the declaration of taking was invalid because the take was not for a public purpose. They argue that because, according to the 2000 Condemnation Ordinance and the declaration of taking, the stated purpose of the condemnation was for the creation of a family regional recreation complex which would include a golf course, movie theater, hotel, conference center, ice skating facility, 40 bowling lanes, family entertainment center, a "first tee" golf facility, ball park and public park, and not all of those intended uses were public in nature, the condemnation for that purpose was unlawful.

However, Condemnees' argument as stated in their brief overlooks the fact that the trial court, in sustaining their preliminary objection which challenged the adequacy of the statement of purpose contained in the City's declaration of taking, directed the City to amend its declaration of taking so as to specify that the purpose for which Condemnees' land had been taken was limited to "nothing other than as and for a municipal golf course, a component thereof, or a facility directly ancillary thereto such as a golf training facility under the auspices of and as a member of The First Tee National Association[.]" (Trial Court's Order dated January 11, 2002). Because, as we stated above, the trial court may allow amendment or direct the filing of a more specific declaration of taking, pursuant to Section 406(e) of the Eminent Domain Code, and the City has not appealed that portion of the trial court's order, the proper inquiry then is whether a municipal golf course or facilities which are directly ancillary to a municipal golf course is an acceptable public purpose for condemnation by the City.[15]

14. Condemnees also contend that the trial court erred in overruling their preliminary objection that the City acted arbitrarily, capriciously and in bad faith and abused its discretion in condemning their property. They argue because the City (1) failed to review a golf course design plan prepared by a golf course architect; (2) failed to undertake necessary land studies prior to the passage of its 2000 Condemnation Ordinance; and (3) based its decision on questionable studies and suspect motivations, it abused its discretion, and, therefore, the declaration of taking was invalid. However, because our review of Condemnees' preliminary objections indicates that Condemnees failed to challenge the City's declaration of taking based upon either the City's failure to review a golf course design plan prepared by a golf course architect or the City's failure to undertake necessary land studies prior to the passage of its 2000 Condemnation Ordinance, those allegations are waived. 26 P.S. § 1–406(a). As to Condemnees' argument that the City abused its discretion in condemning their property because it based its decision on questionable studies and suspect motivations, Condemnees allege that the City rushed to enact its 2000 Condemnation Ordinance because it "desired to beat out the official actions of the neighboring municipalities and a 'take that' to the Sahas." (Condemnees Brief at 55.) However, our review of the record and the City's lengthy process prior to enacting its condemnation ordinance fails to indicate any evidence to support such an allegation.

15. Condemnees also attack the City's proposed golf course as not being for a public purpose because it would directly compete with existing private enterprises as well as 15 other public courses in Chester County and surrounding areas. However, Condemnees have no standing to challenge the City's actions as unlawful competition with other golf courses. *In re Condemnation of 49.0768 Acres, Situate Partly In Rostraver Township*, 427 Pa. 1, 233 A.2d 237 (1967).

Article 1, Section 10 of the Pennsylvania Constitution provides, in relevant part, "No person shall, for the same offense, be twice put in jeopardy of life or limb; nor shall private property be taken or applied to *public use*, without authority of law and without just compensation being first made or secured." Pa. Const. Art. 1, § 10. (Emphasis added.) [16] Speaking for our Supreme Court in *Dornan v. Philadelphia Housing Authority*, 331 Pa. 209, 200 A. 834 (1938), Justice Stern discussed extensively how the issue of "public use" should be addressed whether land could properly be taken under eminent domain, stating:

In Nichols on Eminent Domain, 2d Ed., vol. 1, sec. 40, pp. 129, 130, 131, it is said: 'The disagreement over the meaning of 'public use' is based largely upon the question of the sense in which the word 'use' in the constitution was intended to be understood, and has developed two opposing views, each of which has its ardent supporters among the text writers and courts of last resort. The supporters of one school insist that 'public use' means 'use by the public', that is, public service or employment, and that consequently to make a use public a duty must devolve upon the person or corporation seeking to take property by

right of eminent domain to furnish the public with the use intended, and the public must be entitled, as of right, to use or enjoy the property taken. * * * On the other hand, the courts that are inclined to go furthest in sustaining public rights at the expense of property rights contend that 'public use' means 'public advantage,' and that anything which tends to enlarge the resources, increase the industrial energies, and promote the productive power of any considerable number of the inhabitants of a section of the state, or which leads to the growth of towns and the creation of new resources for the employment of capital and labor, manifestly contributes to the general welfare and the prosperity of the whole community, and, giving the constitution a broad and comprehensive interpretation, constitutes a public use.'

* * *

On the whole, although the cases on this subject in Pennsylvania have been comparatively few in number, it may fairly be stated that, while firmly maintaining the principle that private property cannot be taken by government for other

16. Section 3703 of the Third Class City Code authorizes a city to condemn land outside its geographic boundary, providing:

Cities may enter upon, take, use, purchase and acquire, by gift or by the right of eminent domain, lands, property and buildings, *for the purpose of making, extending, enlarging, and maintaining recreation places which shall consist of public parks, parkways, playgrounds, playfields, gymnasiums, public baths, swimming pools, or indoor recreation centers*, may levy and collect such special taxes as may be necessary to pay for the same, and make appropriations for the improvement, maintenance, care, regulation, and government of the same. Cities may designate and set apart for use for any of the purposes specified in this section lands and buildings owned by such cities

and not dedicated or devoted to other public use. Cities may also lease lands and buildings in such cities for temporary use for such purposes. *Lands, property and buildings outside the limits of the city may be acquired in like manner for recreation places*, and such lands may be annexed to the city, in the manner provided by this act for the annexation of territory to a city. 53 P.S. § 38703. (Emphasis added.) Our Supreme Court has acknowledged that it is common knowledge that municipalities maintain public golf courses in their parks just as they do baseball diamonds, tennis courts and playgrounds. *City of New Castle v. Lawrence County et. al.*, 353 Pa. 175, 44 A.2d 589 (1945); *Bernstein v. City of Pittsburgh*, 366 Pa. 200, 77 A.2d 452 (1951).

than a public use, they justify the conclusion that judicial interpretation of 'public use' has not been circumscribed in our State by mere legalistic formulas or philological standards. On the contrary, definition has been left, as indeed it must be, to the varying circumstances and situations which arise, with special reference to the social and economic background of the period in which the particular problem presents itself for consideration. Moreover, views as to what constitutes a public use necessarily vary with changing conceptions of the scope and functions of government, so that to-day there are familiar examples of such use which formerly would not have been so considered. As governmental activities increase with the growing complexity and integration of society, the concept of 'public use' naturally expands in proportion.

331 Pa. 209, 217–218, 200 A. 834, 838. Justice Stern went on to address specific factors involving the Philadelphia Housing Authority's proposal to operate new housing projects, determining whether those factors weighed in favor of or against a finding that the project was for a public use, stating:

Some of the factors involved in the proposed operation of the new housing projects which are emphasized by plaintiff as being opposed to the theory of a public use prove, upon analysis, to be of little or no weight in the consideration of that subject. Thus the fact that the dwellings cannot and will not be occupied by all, but only by a few of the public having the prescribed qualification of poverty, is wholly lacking in legal significance, because the same may be said as to jails, poorhouses, and indeed many other institutions which are necessarily confined to a use, voluntary or involuntary, by certain selected portions of the population. An occupancy by some may promote, or even be vital to, the welfare of all. Nor is importance to be ascribed to the circumstance that some persons—the tenants—will from time to time receive more benefit from the use of the dwellings than the general public. The same observation would apply to hospitals and schools. *The taking of land for a public golf course or playground would be for a public use although, while some players are using it, all other members of the public are necessarily excluded from utilizing and enjoying the facilities. The difference in the duration of occupancy in these various instances is one of degree. It is not essential that the entire community or even any considerable portion of it should directly enjoy or participate in an improvement in order to make its use a public one.*

331 Pa. 209, 221–222, 200 A. 834, 840. (Emphasis added.) Citing Justice Stern's statement regarding the taking of land for a public golf course, our Supreme Court, later, in *City of New Castle v. Lawrence County et. al.*, 353 Pa. 175, 44 A.2d 589 (1945), held that a city-owned golf course located outside the boundaries of the city and the facilities incidental to the operation of the golf course, i.e., club rooms, locker rooms, ladies' bath and restaurant, was "public property used for public purposes" for the purposes of tax exemption. Although in *City of New Castle*, the Court was addressing whether a city's use of property was exempt from taxation, we believe its conclusion as to whether the golf course was used for a public purpose is equally applicable here, and, therefore, we cannot say that the trial court erred in overruling Condemnees' preliminary objection that the City's proposed use of their

property was not for a public use.[17]

Accordingly, based on the foregoing, the order of the trial court is reversed as to that portion which sustained Condemnees' preliminary objection regarding the excepted parcel and directing the City to amend its declaration of taking so that the excepted parcel conformed to the Valley Township's zoning and subdivision ordinances. In all other respects, the trial court's order is affirmed.

## ORDER

AND NOW, this *7th* day of *April,* 2003, that portion of the order of the Court of Common Pleas of Chester County which sustained Condemnees' preliminary objection regarding the excepted parcel and directing the City to amend its declaration of taking so that the excepted parcel conformed to the Valley Township's zoning and subdivision ordinances is reversed. In all other respects, the trial court's order is affirmed.

Dissenting Opinion by Judge
SIMPSON.

I respectfully dissent from the majority opinion because it finds waiver of the controlling issues which were fully litigated by the parties and addressed by the trial court.

The City condemned approximately 43 acres of Condemnees' 47.5 acre property outside the City in Valley Township. The land included Condemnees' restored 250–year–old farmhouse in which they raised their children, though the farmhouse itself was excepted from the taking (Excepted Tract). The City proposed to locate on the land a regional recreation center, including a golf course and golf-training center.

Condemnees filed preliminary objections to the taking. They raised various issues, including

l. Although the [City] repeatedly stated that it would not take the home of Condemnees, [City] has essentially isolated Condemnees' home by *drawing a square completely around the Condemnees' home* so that it would be surrounded by the condemned property thereby isolating the Condemnees and their families, whose properties now adjoin the Condemnees' property, from each other. These actions are in bad faith, an abuse of discretion, fraudulent, and not justifiable.

. . . .

p. [City] caused a *de facto* taking of Condemnees' Property based on the *size and location of the area condemned,* thereby causing substantial deprivation to the Condemnees of the beneficial use and enjoyment of their remaining property. Further, such action constitutes an abuse of discretion and bad faith by the [City].

. . . .

r. [City] has sought to *condemn large portions of Condemnees' Property based on questionable and unreliable information.* Such action constitutes an abuse of discretion and bad faith, and the justification for this condemnation has no reasonable basis.

. . . .

17. Finally, Condemnees contend that the trial court erred in overruling their preliminary objection that the City failed to comply with its Charter regarding the June 13, 2000 special meeting during which City Council passed the first reading of the 2000 Condemnation Ordinance. However, because none of Condemnees' 28 preliminary objections assert that the City failed to properly call or post notice of the special meeting at which City Council passed the Condemnation Ordinance or any other procedural violation of its Charter by the City, that argument has been waived. 26 P.S. § 1–406(a).

t. In toto, the *[City's] acts and omissions are: illegal, made in bad faith, fraudulent, an abuse of discretion, arbitrary, capricious, and unreasonable.*

Reproduced Record (R.R.) at 488a–89a (emphasis added).

Significant litigation ensued. Ultimately, the trial court sustained Condemnees' preliminary objections challenging the creation of the Excepted Tract. The trial court noted several significant deficiencies in the Excepted Tract after partial condemnation. In particular, the Excepted Tract was left without a water source, without a sanitary sewage disposal field, without frontage on a public road, and without sufficient acreage to lawfully maintain the existing use. The trial court found that these conditions were contrary to City Council's direction for the extraterritorial partial taking, which required that the Excepted Tract "be designed so as to be lawful and in compliance with Valley Township's zoning regulations." Trial Ct. Op., January 11, 2002, at 93–94. Also, after discussing "the City's failure to conduct a sufficient factual and legal investigation before determining the configuration of [the Excepted Tract]," *id.* at 86, 44 A.2d 589, the trial court found "that the particular configuration and location of [the Excepted Tract] was both manifestly unreasonable and the direct product of the misapplication of law." *Id.* at 97, 44 A.2d 589. The trial court concluded:

11) The failure of the excepted parcel to comply with the express direction of City Council is the product of and evidences arbitrariness, caprice, error of law, and abuse of discretion.

*Id.* at 100, 44 A.2d 589.

In summary, Condemnees' challenges included preliminary objections explicitly raising the configuration, size and location of the taking and whether the extent of the taking was based on questionable and unreliable information. These issues were fully litigated and resolved in favor of Condemnees. Also, Condemnees' challenges included preliminary objections that the City's actions were "illegal, made in bad faith, fraudulent, an abuse of discretion, arbitrary, capricious, and unreasonable." These issues were fully litigated and resolved in favor of Condemnees.

In view of the foregoing, I decline to duck the litigated issues and reverse the trial court on a tortured application of waiver.

Rather, I would affirm the trial court based on the express statutory mandate to "determine promptly all preliminary objections and make such preliminary and final orders and decrees as justice shall require. . . ." Section 406(e) of the Eminent Domain Code, 26 P.S. § 1–406(e). In my view, the statutory mandate is intentionally broad, empowering the trial court to fairly deal with existing circumstances, rather than relying on the legislature to specifically anticipate each issue which the ingenuity of counsel can devise. Findings of arbitrariness, caprice, error of law and abuse of discretion justify the trial court's exercise of its broad, express authority to do justice. *See Weber v. Philadelphia,* 437 Pa. 179, 262 A.2d 297 (1970); *Winger v. Aires,* 371 Pa. 242, 89 A.2d 521 (1952); *In Re Heidelberg Township for Footpath, etc.,* 58 Pa.Cmwlth. 321, 428 A.2d 282 (1981).