In Re: Condemnation by the Commonwealth of Pennsylvania, Department of Transportation, of Right of Way for Legislative Route 1084, Sec. A10 R/W, Deed Book 95, Page 69, Claim No. 5400785. Marjorie M. Fetter (now known as Marjorie M. Sassaman), Owner and Hawk Sales Co., Inc., Tenant and Lessee v. Commonwealth of Pennsylvania, Department of Transportation. Hawk Sales Company, Inc., Appellant.

Argued September 12, 1978, before President Judge Bowman and Judges Wilkinson, Jr., Mencer, Rogers, Blatt, DiSalle and MacPhail. Judges Crumlish, Jr. and Craig did not participate.

*William S. Kieser,* with him *Kieser and Gahr,* for appellant.

*Charles A. Buechel, Jr.,* Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General-Chief Counsel, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE DISALLE, November 21, 1978:

Presently before this Court is the appeal of Hawk Sales Company (Lessee) from an order of the Court of Common Pleas of Snyder County which confirmed both a board of view's award of damages to Marjorie Fetter Sassaman (Landowner) and the board's denial of damages to Lessee for the taking of a portion of Landowner's property. Lessee contends that it is entitled to share in the award of general damages to Landowner and to receive further damages occasioned by the dislocation of its business enterprise.

On July 27, 1973, the Department of Transportation (PennDOT) filed a declaration of taking for land

which the Lessee had leased from Landowner. Lessee filed a petition for appointment of a board of view. The board of view conducted two separate hearings: the first dealt with whether the Lessee was entitled to business dislocation damages within the meaning of Section 601-A(b)(3) of the Eminent Domain Code (Code),[1] and whether the limitation on such damages was constitutional; the second hearing dealt with whether PennDOT should be assessed general damages for condemnation of the subject property pursuant to Section 407 of the Code, 26 P.S. §1-407, and, if so, whether the Lessee is entitled to some portion thereof as provided by Section 507 of the Code, 26 P.S. §1-507.

As to the first hearing, the board of view found in its report dated November 25, 1974, that Lessee was not eligible for business dislocation damages since it had several other related commercial establishments in the area which were not subject to condemnation. Having found Lessee ineligible for such damages, the board did not consider the constitutional challenge to the limitation of damages. With respect to the second hearing, the board of view filed a report on March 24, 1976, in which it assessed substantial damages against PennDOT for the Landowner's benefit but refused to apportion such damages between Landowner and Lessee. The board of view reasoned that a specific provision of the lease automatically terminated the Lessee's leasehold interest at the time of the taking and that Lessee, therefore, had no compensable interest. PennDOT and Lessee appealed these decisions to the court of common pleas.

The court of common pleas confirmed the board's determinations. The court found that the Lessee was

---

[1] Act of June 22, 1964, Special Sess., P.L. 84, added by the Act of December 29, 1971, P.L. 640, as amended, 26 P.S. §1-601-A(b)(3).

ineligible for business dislocation damages since it did not meet the requirements of Section 601-A(b)(3).[2] The relevant findings of fact indicate that Lessee owned at least three other commercial establishments within close proximity to the condemned property and that none of these properties had been condemned. With regard to the question of general damages, the court found that a specific lease provision terminated Lessee's leasehold interest at the time of the taking.[3] Hence, Lessee had no leasehold interest upon which to base a claim for damages.

On appeal to this Court, Lessee contends that it is entitled to business dislocation damages despite the fact that it has more than one business location. Further, Lessee challenges the constitutionality of Section 601-A(b)(3). Lessee argues that the Section creates an invidious classification and accords the different classes of businesses created thereby unequal treatment in violation of the equal protection clause of the United States Constitution. The Lessee also contends that the limitation on damages set forth therein vio-

---

[2] Section 601-A(b)(3) provides in pertinent part: "In the case of a business, payment shall be made under this subsection only if the business (i) cannot be relocated without a substantial loss of its existing patronage, and (ii) *is not a part of a commercial enterprise having at least one other establishment not being acquired by the acquiring agency, which is engaged in the same or similar business.*" (Emphasis added.)

[3] The specific lease provision relied upon is as follows: "If the Commonwealth of Pennsylvania or any municipality proceeds in eminent domain with regard to the aforementioned premises, the party of the second part shall be released from the terms of this lease after such time as the proceedings require the premises to be vacated, and the party of the second part agrees that it shall in no way whatever hold the party of the first part liable for any damages, expenses, or anything whatever resulting from such eminent domain proceedings."

lates due process since it precludes payment of just compensation. With regard to general damages, Lessee contends that it is entitled to share in the award of general damages since the lease provision in question did not terminate the leasehold interest at the time of the taking and since Lessee did not waive its right to share in the award of general damages.

We note initially that our review of lower court decisions in eminent domain cases is limited to a determination of whether the court abused its discretion or committed an error of law. *Pidstawski v. South Whitehall Township,* 33 Pa. Commonwealth Ct. 162, 380 A.2d 1322 (1977). Further, it is also clear that a party attempting to show an abuse of discretion bears a heavy burden. *Pidstawski, supra.*

After reviewing the record, we believe that the lower court did not abuse its discretion or commit any error of law in confirming the denial of business dislocation damages to Lessee under Section 601-A.(b)(3) of the Code. It is clear that to recover under this Section, a business must *not* "be a part of a commercial enterprise having at least one other establishment not being acquired by the acquiring agency, which is engaged in the same or similar business." Section 601-A(b)(3)(ii). It is clear that the Lessee *is* such an enterprise. In its appeal from the board of view's November 25, 1974 determination in this regard, Lessee argued that it was entitled to such damages "even though it [Lessee] is a multi-state enterprise and has an establishment which is not being acquired by the acquiring agency which is engaged in the same or similar business in other market areas." We are hard pressed to understand how this admission can be reconciled with the clear and precise proviso of Section 601-A(b)(3)(ii). The court below did not err in applying the relevant law and, given Lessee's admission,

did not abuse its discretion in denying business dislocation damages.

Turning to the constitutional challenges to Section 601-A(b)(3), since Lessee was properly adjudged ineligible for damages under this section, we need not reach the question of whether the limitation on such damages is valid. As to the equal protection question raised by Lessee, it is apparent that this contention was not raised before, or discussed by, either the board of view or the court of common pleas.[4] This Court has consistently held that matters not properly raised in, or considered by, the court below cannot be considered on appeal, even though such matters involve constitutional questions. *Richland Township v. Hellerman,* 30 Pa. Commonwealth Ct. 438, 373 A.2d 1367 (1977). Therefore, this Court will not address the equal protection argument raised by Lessee.

The final question remaining is whether Lessee is entitled to share in the award of general damages assessed against PennDOT for the Landowner's benefit. Consideration of this more complex question requires further background discussion.[5]

The laws of the Commonwealth clearly provide that the owner of a property interest which is injured or destroyed as a result of condemnation for a public purpose is entitled to just compensation therefor. *See* Sections 201(2), 303, and 601 of the Code, 26 P.S. §§1-201(2), 1-303, and 1-601. There is no question that a leasehold interest is a property interest and, as such,

---

[4] The sole constitutional question raised below dealt with the constitutionality of the damage limitation. No reference was made to an equal protection violation premised upon unequal treatment accorded different types of businesses.

[5] *See generally,* Snitzer, Pennsylvania Eminent Domain §201(2)-9 (1965) (hereinafter cited Snitzer).

cannot be condemned for a public use without payment of just compensation.

Section 402 of the Code, 26 P.S. §1-402, provides that a condemnation may be "effected" by the filing of a declaration of taking and that, upon such filing, the condemnor (in this case PennDOT) acquires title to the property as of that date. Hence, the rights of the Lessee and all other owners of property interests are determined by operation of law at the time of the filing of the declaration of taking.[6] The relevant inquiry, then, becomes whether or not a leasehold interest existed here at the time of the condemnation.

The lease between Landowner and Lessee in this case contained a clause (set forth *supra* note 3) which provides that in the event the Commonwealth or other condemning authority "proceeds in eminent domain . . . [Lessee] shall be released from the terms of this lease after such time as the proceedings require the premises to be vacated." It has been held that where the lease is not terminated automatically by the condemnation, the tenant will be entitled to damages. In *Re Plot of Ground for Municipal Purposes*, 8 Pa. D. & C. 739 (1927) *aff'd Scholl's Appeal*, 292 Pa. 262, 141 A. 44 (1928); *see also* Snitzer §201(2)-9. As is suc-

---

[6] Section 507(a) of the Code, 26 P.S. 1-507(a), provides that where a leasehold interest exists in the condemned property, the board of view shall first set a total general damages amount and then fix the apportionment between the various owners of property interests. (This total damages figure represents the total market value of the property just before condemnation and the total fair market value of the property after condemnation *without* regard to the separate property interests.) It is clear, therefore, that the relative interests of the owner and the tenant are in conflict: the more the tenant is apportioned, the less the owner will receive, and vice-versa. However, it must be remembered that the owner is not liable to the tenant. Rather, the condemnor remains liable for the total general damages regardless of any apportionment.

cinctly stated in Nichol's treatise on eminent domain law, "the law does not look with favor on clauses causing forfeiture of the lessee's interest on condemnation, hence, a lease covenant will be construed not to have that effect if its language and the circumstances possibly permit." Nichols, *The Law of Eminent Domain* §5.23(2) (3d ed. 1976).

Looking to the lease provision in question, we believe that the Lessee's leasehold interest did not automatically terminate at the time of the taking. The condemnation clause provides that the Lessee would be "released" from the terms of the lease "after such time as the proceedings require the premises to be vacated." This provision makes no reference whatsoever to automatic termination of the lease upon the taking of the property as was involved, for instance, in *Scholl's Appeal, supra.*[7] Rather, it makes the termination contingent upon the vacation of the property pursuant to some proceeding. If such a contingency can arise after the time of the taking, then it is obvious that the Lessee's interest may not have terminated until some time after the condemnation of the property.

It is abundantly clear under the Code that the passage of title from condemnee to condemnor, which takes place at the time of the filing of the declaration of taking, does not thereby entitle the condemnor to possession. *See* Sections 402 and 407, 26 P.S. §§1-402, 1-407. Section 407 provides that the condemnor's right to possession does not ripen until the condemnor pays

---

[7] "In the event that the premises demised, or any part thereof, are taken or condemned for a public or quasipublic use, this lease shall, as to the part so taken, terminate as of the date title shall vest in the condemnor, and rent reserved shall abate proportionately as to the part so taken, or shall cease if the entire premises demised be so taken." *Scholl's Appeal*, 292 Pa. at 265, 141 A. at 45.

or offers in writing to pay the amount of just compensation.[8] This section goes on to delineate the process by which the condemnor may compel the condemnee to deliver up possession *after* the condemnor's right to possession has accrued. Hence, there is no doubt that the time when the premises are "required" to be vacated may fall well after the time of the taking.[9] We have no difficulty, then, in finding that the condemnation clause here involved did not automatically terminate Lessee's leasehold interest at the time of the taking.

In its brief, the Commonwealth makes much of the effect this interpretation would have on the interplay of rights and duties of the parties during that interim between the date of condemnation and that time when the condemnee/tenant relinquishes possession. We emphasize that the rights and duties of the parties after the condemnation are not at issue in the present case; the issue is whether the leasehold interest continued to exist after the condemnation. We hold only that, by its express language, the condemnation clause

---

[8] "(a) The condemnor, after the expiration of the time for filing preliminary objections by the condemnee to the declaration of taking, shall be entitled to possession or right of entry upon payment of, or a written offer to pay to the condemnee, the amount of just compensation as estimated by the condemnor. If a condemnee thereafter refuses to deliver possession or permit right of entry, the prothonotary upon praecipe of the condemnor shall issue a rule, returnable in five days after service upon the condemnee, to show cause why a writ of possession should not issue, upon which the court, unless preliminary objections warranting delay are pending, may issue a writ of possession conditioned upon payment to the condemnee or into court of such estimated just compensation and on such other terms as the court may direct."

[9] We are supported in this conclusion by the fact that the Code goes on to provide for "delay" compensation in some instances where the condemnee remains in possession after the condemnation. *See* Section 611, 26 P.S. §1-611.

did not extinguish the Lessee's interest *at the time of the taking* and that the Lessee is, therefore, entitled to an apportionment of the general damages. Consequently, the lower court erred in finding that the condemnation clause terminated the Lessee's leasehold interest.

The Commonwealth also argues that the Lessee's agreement in the lease not to hold the Landowner liable in any way for damages arising from any eminent domain proceeding (see *supra* note 3) should be interpreted to mean that the Lessee waived its right to share in the apportionment. We find no merit in this contention. The express language of this provision simply provides that the Lessee will not hold the Landowner liable in any way for the condemnation. The law is clear that the condemnor is liable for the payment of damages in this case and that such liability remains the same whether there is an apportionment or not. Since the Commonwealth's liability is clear and no question exists as to the Landowner's liability, this waiver of rights provision simply does not apply in the instant case.[10]

ORDER

AND Now, this 21st day of November, 1978, that part of order of the Court of Common Pleas of Snyder County confirming the report of the board of view filed November 25, 1974, is affirmed. That part of the Court's order confirming the report of the board of

---

[10] The Commonwealth also argued that a specific lease provision providing for payment of a lesser rent during the first 2 years of the tenancy "in consideration" of the possibility that the Lessee might be displaced by eminent domain proceedings tended to support the conclusion that the leasehold interest was to terminate at the time of the taking. The proper interpretation of this recital of consideration was much disputed below and the lower court made no reference to it at all in its opinion. We see no reason to address it here.

view filed March 24, 1976, is reversed to the extent it denies Lessee, Hawk Sales Company, the right to share in the award of general damages. The case is, therefore, remanded for a determination of the apportionment of the ward of general damages between Hawk Sales Company and Marjorie Fetter (Sassaman). ·

DISSENTING OPINION BY JUDGE WILKINSON, JR.:

I must respectfully dissent. The right of the tenant to share in the award of general damages is dependent on the damages the tenant suffers by reason of the unconsumed term as a result of the condemnation. This lease provided that the lease ended when the condemnation proceedings required the tenant to vacate. As to the tenant, this is the time his rights are affected by the taking. Under the majority view, it would be quite possible for the tenant to use and enjoy his entire tenancy for the original term and still receive a share of the damages as if no termination clause was in the lease and the lease was terminated at the date of condemnation. I would affirm the Court of Common Pleas of Snyder County.

Judge MACPHAIL joins.