**In Re: Condemnation by the DEPARTMENT OF TRANSPORTATION, OF THE RIGHT OF WAY FOR STATE ROUTE 0202, SECTION 701, a limited access highway in the Townships of Montgomery and Upper Gwynedd**

**Rajkumar Guttha**

**v.**

**Commonwealth of Pennsylvania, Department of Transportation**

**Appeal of: Rajkumar Guttha**

Commonwealth Court of Pennsylvania.

Argued March 1, 2005.

Decided April 11, 2005.

---

Cornelius J. Van Galen, North Wales, for appellant.

Crispino M. Pastore, Asst. Counsel, Pittsburgh, for appellee.

BEFORE: PELLEGRINI, Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEAVITT.

Rajkumar Guttha (Guttha) appeals an order of the Court of Common Pleas of Montgomery County (trial court), which was entered in an eminent domain case. Guttha, as proprietor of a business with a leasehold interest in condemned property, filed a petition for the appointment of a board of viewers. The Commonwealth of Pennsylvania, Department of Transportation (PennDOT), filed preliminary objections to Guttha's petition, and the trial court sustained the objections.

On August 18, 2003, PennDOT filed a declaration of taking to condemn, in its entirety, property located at Routes 63 and 202, in North Wales, Montgomery County, that was owned by Exxon Mobil Corporation (Exxon). The declaration identified the condemned property as Parcel No. 65, and it named both Exxon and its tenant, Gwynedd Exxon, as the parties affected by the taking.[1] On November 6, 2003, Guttha filed a petition for appointment of viewers, which, *inter alia*, identified himself as the tenant and Exxon as the fee simple owner of Parcel No. 65. On November 7, 2003, the trial court appointed a board of viewers.

On December 10, 2003, PennDOT filed preliminary objections to Guttha's petition, asserting that Guttha's leasehold interest in Parcel No. 65 was not compensable. Attached to and incorporated into PennDOT's objections was a letter dated December 4, 2003, from Exxon to Guttha, with a copy to PennDOT, directing Guttha to withdraw his petition in accordance with his contractual obligation to Exxon. Further, by this letter, Exxon informed Guttha that it stipulated to PennDOT's preliminary objections.

The facts relevant to the condemnation of Parcel No. 65 are as follows. In 1993,

---

1. Gwynedd Exxon is a proprietorship, and Guttha is the sole proprietor.

for consideration in the amount of $157,000, Guttha acquired a Lease and Franchise Agreement (Lease) by assignment. The Lease set forth the terms of his operation of an Exxon/Mobil service station and convenience store on the condemned property. The Lease provided, in relevant part, as follows:

3.4 Condemnation. Without limiting any provisions of the Agreement, Franchise Dealer shall comply with all Laws governing condemnation or eminent domain awards. *All sums payable by a condemning authority for a taking of any portion of the Marketing Premises,* whether payable due to a purchase in lieu of condemnation, a settlement reached after the initiation of condemnation proceedings, a final judgment or otherwise, *will be paid to Exxon Mobil and Franchise Dealer has no interest whatsoever in those sums; except that Franchise Dealer may receive any sum payable by the condemning authority for loss of goodwill* by Franchise Dealer. Franchise Dealer shall notify Exxon Mobil promptly upon Franchise Dealer's receipt of any notice, or other communication, of a taking or proposed taking of any portion of the Marketing Premises from any condemning authority. *Exxon Mobil shall have the right to settle or dispute any condemnation proceedings in its sole discretion. Franchise Dealer may not independently participate in any condemnation proceedings affecting the Marketing Premises,* but shall cooperate fully with Exxon Mobil in any condemnation proceedings. Franchise Dealer shall sign and deliver any documents, and take other action, requested by Exxon Mobil in connection with condemnation proceedings or any settlement of those proceedings.

Reproduced Record 29a (R.R. ——)(emphasis added). The Lease specified what was meant by "marketing premises" as follows:

1.1 Lease. Subject to the terms and conditions of this Lease and the Agreement, Exxon Mobil leases to Franchise Dealer, and Franchise Dealer leases from Mobil Exxon, the following marketing premises (the "Marketing Premises"):

**Rt. 63 & 202, North Wales, PA 19454–0000**

*Which includes the improvements,* now or at any time during the Term, located on the Marketing Premises and *all equipment listed on the attachment entitled "CODO Lease Schedule"* which attachment is incorporated into this Lease.

R.R. 25a (emphasis added).

On July 29, 2004, after receiving briefs, the trial court sustained PennDOT's preliminary objections. The trial court quashed Guttha's petition and vacated the court's earlier order of November 6, 2003, that had appointed a board of viewers. The trial court determined that under Paragraph 3.4 of the Lease, Guttha had waived a claim for condemnation damages and was barred from participating in the condemnation proceeding, except with respect to the goodwill associated with his business. *Trial Court Memorandum,* at pp. 2–3. After Guttha filed a concise statement of matters complained of on appeal, the trial court issued a memorandum opinion. The trial court dismissed as meritless Guttha's claim that PennDOT could not rely upon a contract to which it was not a party, *i.e.,* the Lease. The trial court held that the condemnation clause in the Lease was conclusive as to the scope of Guttha's leasehold interest and opportunity for general condemnation damages. *Trial Court Opinion,* pp. 3–6.

On appeal,[2] Guttha identifies three errors in the trial court's decision that require this Court's reversal. The errors asserted by Guttha are as follows. First, the trial court erred in allowing PennDOT to use the Lease, a contract to which it was not a party, as a way to avoid payment of just compensation. Second, the trial court erred in finding that Guttha waived his right to compensation from the condemnation of Parcel No. 65. Third, the trial court erred in construing Paragraph 3.4 to mean that Guttha waived special damages, such as business reestablishment expenses, that are available under the Eminent Domain Code. We consider these arguments *seriatim.*

Guttha's interest in the condemnation of Parcel No. 65 is governed by the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §§ 1–101–1–903. Section 507 of the Eminent Domain Code, provides, in relevant part, as follows:

(a) *The claims of all the owners of the condemned property,* including joint tenants, tenants in common, life tenants, remaindermen, owners of easements, or ground rents, and all others having an interest in the property, and the claims of all tenants, if any, of the property, *shall be heard or tried together and the*

*award of the viewers* or the verdict on appeal from the viewers shall first fix the total amount of damages for the property, and second, *apportion the total amount of damages between or among the several claimants entitled thereto.*

(b) Claims for removal expenses, business dislocation damages and moving expenses may be heard or tried separately.

26 P.S. § 1–507. The board of viewers, then, not only determines the total market value of the condemned property but how it is to be apportioned among the parties with an interest in the property subject to the taking. *Hawk Sales Company, Inc. Appeal,* 38 Pa.Cmwlth. 535, 394 A.2d 657 (1978). Necessarily, the interests of the parties conflict; the more a tenant receives of the total award, the less the fee simple owner receives.[3]

Due to the conflict between the interests of a landlord and its tenant, leases may include a condemnation clause to address this potential conflict. The clause will sometimes provide that the lease terminates upon condemnation, thus precluding the tenant from having a property interest that could be subject to a taking. That was the situation in *Appeal of Scholl,* 292

---

**2.** Preliminary objections in a condemnation case are intended to resolve all factual and legal issues raised by the objections prior to the appointment of viewers. *Jacobs v. Nether Providence Township,* 6 Pa.Cmwlth. 594, 297 A.2d 550, 553 (1972). When reviewing a trial court order on preliminary objections to a petition for viewers, this Court's scope of review is limited to determining whether the trial court abused its discretion or committed an error of law. The trial court is the fact finder and its findings will not be disturbed if supported by substantial evidence. *Berk v. Commonwealth, Department Transportation,* 168 Pa.Cmwlth. 560, 651 A.2d 195, 198 n. 1 (1994), *appeal denied,* 541 Pa. 628, 661 A.2d 875 (1995).

**3.** Where a leased property is taken in its entirety, just compensation for the leasehold is limited to the difference between the fair rental value of the leased premises and the rent actually reserved in the lease. This "bonus value," projected over the remaining term of the lease and discounted to present worth constitutes the damages which a lessee is entitled to recover. *Appeal of Patrick Media Group, Inc.,* 720 A.2d 154, 157 (Pa.Cmwlth. 1998). In no event can the recovery be based on evidence of the loss of future income. *Denes v. Pennsylvania Turnpike Commission,* 745 A.2d 66, 70 (Pa.Cmwlth.2000).

Pa. 262, 141 A. 44 (1928), where the Supreme Court stated:

> It is claimed the city had no interest in the lease, and, not being a party to it, should not be permitted to take advantage of any of its terms. Municipal awards must be made to each claimant showing an interest damaged. It is very important for the city to know what interests are affected·and to whom it owes money. *It certainly could not be liable to persons who had no interest in the property.*

292 Pa. at 266, 141 A. at 45 (emphasis added). Since *Scholl,* courts use contractual condemnation clauses to determine which person should be paid by the condemnor. *See, e.g., Amoco Oil Company v. Department of Transportation,* 157 Pa. Cmwlth. 222, 629 A.2d 259, 260–261 (1993); *Hawk Sales Company, Inc. Appeal,* 394 A.2d at 662. This is true even where the condemnor is not a party to the lease.

By statute, both Exxon, as fee simple owner, and Guttha, as tenant, have interests in Parcel No. 65 that must be resolved in the same condemnation proceeding. Section 507(a) of the Code, 26 P.S. § 1–507(a). For this reason, both parties were named in PennDOT's declaration of taking "as their interests may appear," R.R. 9a, and both parties were named in Guttha's petition. How those interests are to be addressed in the condemnation proceeding was the subject of Paragraph 3.4 in the Lease.

Guttha claims that PennDOT may not rely upon the condemnation clause be-

cause it is not a party to the Lease. Guttha asserts that PennDOT, in effect, is seeking to enforce a provision in a contract to which it is not a party. To that end, Guttha directs our attention to a line of cases that stand for the proposition that only those who are parties to a contract may enforce its terms. *See, e.g., CGU Life Insurance Co. v. Metropolitan Mortgage & Securities Co., Inc.,* 131 F.Supp.2d 670, 676 (E.D.Pa.2001). This proposition is unassailable, as plainly established in the cases cited by Guttha.[4] Nevertheless, these cases are inapposite.

First, the cases cited deal with private persons, where a third party seeks to enforce the terms of a contract to its own private benefit. Here, we consider a taking by government, and the condemnor does not seek to benefit from the condemnation clause in the Lease. The market value of Parcel No. 65 is what it is, and it must be paid, without diminution, by PennDOT. The only question is which party or parties will receive that award of market value.

Second, PennDOT is not enforcing the Lease; rather, it is using the Lease as evidence to determine which person is owed the market value of Parcel No. 65. As in *Scholl,* PennDOT is permitted to rely on the terms of the Lease "to know what interests are affected and to whom it owes money." 292 Pa. at 266, 141 A. at 45. PennDOT cannot be liable to a person who has contractually abrogated its rights to condemnation damages by the terms of the written agreement that created the leasehold interest.[5]

---

**4.** *See also Hahn v. Atlantic Richfield Co.,* 625 F.2d 1095, 1104 (3d Cir.1980) (parties to a contract have no duty to nonparty); *Halstead v. Motorcycle Safety Foundation, Inc.,* 71 F.Supp.2d 455, 460 (E.D.Pa.1999) (for third party to have rights in a contract it must be so intended by the parties); *R.M. Shoemaker Co. v. Southeastern Pennsylvania Economic Devel-*

*opment Corp.,* 275 Pa.Super. 594, 419 A.2d 60, 62–63 (1980); *Forum Insurance Co. v. National Union Fire Insurance Co. of Pittsburgh,* 865 F.2d 584, 586 (3d Cir.1989) (nonparty to lease may not use lease to pursue affirmative claim).

**5.** Notably, Guttha's argument in this regard disregards Exxon's effort to enforce the Lease

■ In sum, we hold that PennDOT appropriately used the Lease to determine how the condemnation award for the taking of Parcel No. 65 is to be divided. PennDOT did not need to be a party to the Lease in order for the terms of the Lease to be used as evidence establishing Guttha's interest in condemnation damages.[6] Indeed, there is no other way to establish the rights of a tenant in property subject to condemnation.

■ Next, we consider Guttha's contention that he did not waive his right to compensation for the condemnation of his leasehold and other interests. Guttha asserts that because the Lease does not include the words "leasehold interest" within the meaning of "marketing premises," Paragraph 3.4 has no application to his interest in Parcel No. 65. We disagree.

■ A lease and franchise agreement are contracts and, as such, must be construed in accordance with general contract principles. *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 200, 519 A.2d 385, 389 (Pa.1986). In construing a contract, a court must determine the intent of the parties and give effect to all of the provisions therein. *Capek v. Devito*, 564 Pa. 267, 274, 767 A.2d 1047, 1050 (2001). When words of a contract are clear, the intent of the parties will be found in the express language of the agreement itself. *Amerikohl Mining, Inc. v. Mount Pleas-*

*ant Township*, 727 A.2d 1179, 1182 (Pa. Cmwlth.1999).

Here, the Lease provided that
[a]ll sums payable by a condemning authority for a taking of any portion of the Marketing Premises ... will be paid to Exxon ... and [Guttha] has no interest whatsoever in those sums; except that [Guttha] may receive any sum payable ... for loss of goodwill.

R.R. 29a.[7] Guttha argues that his leasehold interest is not controlled by the condemnation clause because it relates only to the "marketing premises," which does not specifically state that it includes the leasehold interest. However, the Lease identifies "marketing premises" as the entire property leased to Guttha, including the improvements thereto and certain equipment thereon. To include the words "leasehold interest" in the definition of "marketing premises" would have been circular; the purpose of the contract was to identify and convey a leasehold interest in the "marketing premises." Guttha's argument to the contrary is not persuasive. The Lease delivered to Guttha an intangible, *i.e.*, the right to use the physical property identified in the Lease as the "marketing premises."

Further, Guttha's argument would render the condemnation clause meaningless. Its stated intent was to exclude any apportionment of the condemnation award to the tenant, thereby preserving the entire general damages award for the landlord. If Paragraph 3.4 was not intended to exclude

---

by stipulating to PennDOT's preliminary objections. It cannot be denied that Exxon is a party to the Lease and can enforce its terms.

**6.** The dissent contends that a lease cannot be considered by the trial court on preliminary objections but only by the board of viewers. In light of the fact that preliminary objections decide dispositive legal and factual questions, we disagree. If precedent teaches that a lease

has evidentiary value to a board of viewers, it teaches the same with respect to preliminary objections under the Eminent Domain Code.

**7.** The Lease continues by clarifying: "Franchise Dealer may not independently participate in any condemnation proceedings affecting the Marketing Premises, but shall cooperate fully with Exxon Mobil in any condemnation proceedings." R.R. 29a.

the tenant from sharing in the condemnation proceeds for general damages, then the contract provision has no meaning. We must presume, however, that the parties meant something by including this provision in their contract.

The incongruity of Guttha's position was not overlooked by the trial court. Guttha relied upon the condemnation clause to argue, successfully, that his leasehold interest was not terminated by PennDOT's condemnation. He then argued that this clause did not limit his right to general condemnation damages. The trial court, however, held that the Lease could not more clearly state that Guttha had no interest in the monetary award for the condemnation of Parcel No. 65 and that Guttha could not initiate his own condemnation proceeding for the loss of his leasehold interest. We agree with this reading of Paragraph 3.4 and the trial court's holding in this regard.

■ Finally, we consider Guttha's claim that he did not waive his right to special damages. Guttha contractually preserved his right to claim damages for his loss of goodwill. Although "goodwill" is not defined, it is generally understood to signify the intangible assets of a business. Here, the contract appears to signify the value of an on-going business that was operated on the condemned property.

■ Article VI–A of the Eminent Domain Code establishes a right to special damages where a condemnation leads to displacement of a business. 26 P.S. §§ 1–601A–1–606A. A displaced person is defined as any condemnee or other person who moves from real property or moves his personal property from real property due to a condemnation. 26 P.S. § 1–201(8).[8] A tenant who is not entitled to general damages may be entitled to special damages for displacement. *Local 325 of the United Food & Commercial Workers Union v. Department of Transportation,* 132 Pa.Cmwlth. 1, 571 A.2d 557, 558 n. 2 (1990).

Here, Guttha contends that even if he is not a condemnee entitled to general condemnation damages, he is not precluded from claiming the moving and related expenses provided by Section 601–A of the Eminent Domain Code, 26 P.S. § 1–601A. We agree with Guttha. Notably, PennDOT does not dispute the fact that Guttha is a "displaced person" within the meaning of the Eminent Domain Code. Indeed, Guttha has been paid $33,350 for personal property as provided by Section 601A(b)(1) of the Eminent Domain Code, 26 P.S. § 1–601A(b)(1).

■ PennDOT concedes that Guttha has a right to special damages under the

---

8. It states in relevant part as follows:
The following words, when used in this act, unless the context clearly indicates otherwise, shall have the meanings ascribed to them in this section:
\* \* \*
(8) **"Displaced person"**
(i) Means:
\* \* \*
(B) Solely for the purpose of section 601–A(a)(1) and (2) of this act, any person who moves from real property or moves his personal property:
(I) as a direct result of a written notice of intent to acquire or the acquisition of other real property, in whole or in part, on which such person conducts a business or farm operation, for a program or project undertaken by an acquiring agency; or
(II) as a direct result of rehabilitation, demolition or other displacing activity of other real property on which such person conducts a business or a farm operation, under a program or project undertaken by an acquiring agency where the displacement is permanent.
26 P.S. § 1–201(8).

Eminent Domain Code but argues that so far Guttha has failed to prove his right to them. Under Section 601A(a)(1) and (2),[9] for example, a displaced person may be entitled to payment of his moving expenses. Payment of such expenses, however, is in the form of a reimbursement and is not due until the displaced person actually moves and submits receipts for the actual costs incurred. *Appeal of Philadelphia Electric Co. (PECO)*, 135 Pa. Cmwlth.100, 580 A.2d 424, 430 (1990), *appeal denied*, 528 Pa. 615, 596 A.2d 161 (1991). Similarly, under Section 601A(b)(3) and (4),[10] a displaced person may be entitled to payment of actual reasonable expenses of searching for a replacement business and actual reasonable expenses of reestablishing a small business. 26 P.S. § 1–601A(b)(3)–(4). PennDOT asserts that because Guttha has not presented any documentation of expenses incurred to move his business or to reestablish a new business, he has failed to meet his burden with respect to these special damages.

The trial court never addressed Guttha's claim to have a board of viewers determine special damages under Section 601–A of the Eminent Domain Code. Because the Lease did not address special damages, Guttha's rights to special damages under the Eminent Domain Code are unaffected by Paragraph 3.4. Even PennDOT acknowledges that Guttha has a right to present evidence to support his claim for special damages. Regulations establish a procedure whereby a claim to special damages may be pursued by way of an administrative remedy. 37 Pa.Code § 151.2(3).[11] However, this Court has held that the existence of this remedy does not preclude a right to appointment of a board of viewers to determine special damages. *Bernotas v. Chester County Water Resources Authority*, 124 Pa.Cmwlth. 144, 555 A.2d 309, 311 (1989). Although PennDOT claims that Guttha has not met his burden to show a right to special damages under Section 601A of the Eminent Domain Code, Guttha has not been given this op-

9. It states:

(a) Any displaced person shall be reimbursed for reasonable expenses incurred in moving himself and his family and for the removal, transportation, and reinstallation of personal property.

(1) Receipts therefor shall be prima facie evidence of incurred reasonable moving expenses.

(2) Any displaced person who is displaced from a dwelling may elect to receive, in lieu of reimbursement of incurred moving expenses, a moving expense and dislocation allowance, determined in accordance with regulations promulgated under this act.

26 P.S. § 1–601A(a)(1)–(2).

10. It states:

(b) Any displaced person who is displaced from his place of business or from his farm operation shall be entitled in addition to any payment received under subsection(a) of this section, to damages for dislocation of such business or farm operation as follows:

* * *

(3) Actual reasonable expenses in searching for a replacement business or farm determined in accordance with regulations promulgated under this act.

(4) Actual reasonable expenses necessary to reestablish a displaced farm, nonprofit organization or small business at its new site, in accordance with criteria to be established by regulation, but not to exceed ten thousand dollars ($10,000).

601A(b)(3)-(4).

11. It states:

The provisions of this chapter have been promulgated to insure the following:

* * *

(3) That persons aggrieved by a determination as to eligibility for a payment authorized by Article VI–A of the act (26 P.S. §§ 1–601A–1–606A), or the amount of a payment, may elect to have their applications reviewed by the head of the acquiring agency or his designee.

37 Pa.Code § 151.2(3).

portunity. There has been no factfinding by any tribunal on Guttha's request for special damages.

For these reasons, we affirm the trial court's holding with respect to Guttha's claim for general condemnation damages. We vacate the trial court's order with respect to special damages and remand for further proceedings on PennDOT's preliminary objections, to the extent these objections were intended to apply to Guttha's request for special damages under Section 601–A of the Eminent Domain Code.

## ORDER

AND NOW, this 11th day of April, 2005, the order of the Court of Common Pleas of Montgomery County dated July 26, 2004, in the above-captioned matter, is hereby affirmed in part and vacated in part. This matter is remanded for further proceedings consistent with the attached opinion.

Jurisdiction relinquished.

DISSENTING OPINION BY Senior Judge KELLEY.

I respectfully dissent.

In support of its determination that the appointment of a board of viewers on Guttha's claim for general condemnation damages was properly quashed, the Majority cites to *Appeal of Scholl*, 292 Pa. 262, 141 A. 44 (1928), *Amoco Oil Company v. Department of Transportation*, 157 Pa. Cmwlth. 222, 629 A.2d 259 (1993) and *Appeal of Hawk Sales Company, Inc.*, 38 Pa.Cmwlth. 535, 394 A.2d 657 (1978). However, in each of these cases, the leases in question were not considered by the trial court in a preliminary manner as a preliminary objection to the appointment of a board of viewers but, rather, were either considered by the board of viewers

to determine the amount of damages to be awarded to the various parties in interest, or in a challenge to the award of the board of viewers. *See, e.g., Appeal of Scholl*, 292 Pa. at 265, 141 A. at 45 ("The city contended, before the viewers, that this provision of the lease precluded recovery on the part of this subtenant for any damages that might have been sustained because of the condemnation, the subtenancy having terminated at that date as effectually as though that period had been written into the lease. The city, therefore, took nothing from the subtenant...."); *Amoco Oil Company*, 629 A.2d at 260 ("[PennDOT], Amoco and Ms. Weiss appealed to the trial court. The sole question raised by Amoco and Ms Weiss concerns the amount of the award. [PennDOT]'s appeal alleged that because Amoco had no right to damages the court should determine their preliminary objection in accordance with Section 517 of the Code, 26 P.S. § 1–517...."); *Appeal of Hawk Sales Company, Inc.*, 394 A.2d at 659 ("[T]he board of view reasoned that a specific provision of the lease automatically terminated the Lessee's leasehold interest at the time of the taking and that Lessee, therefore, had no compensable interest. PennDOT and Lessee appealed these decisions to the court of common pleas. The court of common pleas confirmed the board's determinations.... With regard to the question of general damages, the court found that a specific lease provision terminated Lessee's leasehold interest at the time of the taking. Hence, Lessee had no leasehold interest upon which to base a claim for damages.") (footnote omitted).

Thus, as in *Appeal of Scholl*; *Amoco Oil Company*, and *Appeal of Hawk Sales Company, Inc.*, in this case the Lease should have been considered by the board of viewers in the apportionment of damages under the relevant provisions of the

Eminent Domain Code, and not as a means by which the condemnor, PennDOT, could seek to quash Guttha's claim for damages under the Code. As a result, the trial court in this case improperly quashed the appointment of the board of viewers with respect to all of Guttha's claims for damages. Rather, the trial court should have directed the board of viewers to address the application of the Lease to the apportionment of all damages under the relevant provisions of the Code. *See, e.g., Appeal of Hawk Sales Company, Inc.*, 394 A.2d at 659 ("[W]ith respect to the second hearing, the board of view filed a report on March 24, 1976 in which it assessed substantial damages against PennDOT for the Landowners' benefit but refused to apportion such damages between Landowner and Lessee. The board of view reasoned that a specific provision of the lease automatically terminated the Lessee's leasehold interest at the time of the taking and that Lessee, therefore, had no compensable interest...."); *In re Condemnation for Legislative Route 23047*, 79 Pa.Cmwlth. 512, 470 A.2d 1080, 1085 (1984) ("[W]e conclude, with regard to the instant case, that preliminary objections under Section 504 of the Code could have been used by the condemnor[, PennDOT,] to raise a legal challenge or objection to the condemnee's claimed ownership of the easements set forth in the petition for viewers, which was filed on April 23, 1970. [PennDOT]'s contention that those easements expired prior to the 1968 condemnation, because the trolley tracks had been removed, depends, as a threshold matter, on the construction and legal operation of the ancient deeds that created the easements. Had the condemnor raised its challenge by timely preliminary objections to the petition for viewers, the court could have directed the viewers to address the issue of the condemnee's ownership of the easements. *Appeal of Powell*, 385 Pa. 467, 123 A.2d 650 (1956).").

Accordingly, unlike the Majority, I would vacate the trial court's order in all respects.