# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Condemnation by Sunoco                  :
Pipeline, L.P. of Permanent and                :
Temporary Rights of Way for the                :
Transportation of Ethane, Propane,             :
Liquid Petroleum Gas, and Other                :
Petroleum Products in the Township             :
of Upper Frankford, Cumberland                 :
County, Pennsylvania, Over the                 :
Lands of Rolfe W. Blume and                    :
Doris J. Blume                                 :
                                               :
Appeal of: Rolfe W. Blume and                  :    No. 1306 C.D. 2016
Doris J. Blume                                 :    Argued:  March 6, 2017

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE JULIA K. HEARTHWAY, Judge
            HONORABLE DAN PELLEGRINI, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER                    FILED:  May 26, 2017

Rolfe W. and Doris J. Blume (Condemnees) appeal from the Order of the Court of Common Pleas of Cumberland County (trial court) that overruled their preliminary objections to Sunoco Pipeline L.P.'s (Condemnor) Declaration of Taking. The trial court found the majority of Condemnees' preliminary objections were controlled by this Court's prior *en banc* decision in <u>In Re: Condemnation by Sunoco Pipeline, L.P.</u>, 143 A.3d 1000 (Pa. Cmwlth.), <u>petition for allowance of appeal denied</u>, (Pa. Nos. 571, 572, 573 MAL 2016, filed December 29, 2016)

(Sunoco I). The few issues that were not explicitly covered by Sunoco I were nonetheless meritless, according to the trial court. After careful review of the record, and consistent with our decision in Sunoco I, we discern no error and therefore affirm.

## I.      Factual & Procedural Background

This case is the latest in a line of cases challenging the ability of Condemnor to exercise eminent domain to condemn private property in order to construct its pipeline. On September 30, 2015, Condemnor filed a Declaration of Taking under Section 302 of the Eminent Domain Code, 26 Pa. C.S. § 302, seeking to condemn portions of Condemnees' property located at 45 Wildwood Road, Newville, Upper Frankford Township, Cumberland County. (Declaration of Taking, ¶¶ 50-51.) Condemnor sought a permanent easement over 1.92 acres and a temporary workspace easement over 0.97 acres. (Id. ¶ 52.)

Condemnor maintains the condemnation is necessary to construct the second phase of its Mariner East project. The project began in 2012 and was designed to relieve an oversupply of natural gas liquids (NGLs) in the Marcellus and Utica Shale basins and to alleviate supply-side shortages of propane in Pennsylvania and the Northeast. (Id. ¶ 8.) Phase I, commonly referred to as Mariner East 1, initially prioritized the interstate pipeline transportation of propane and ethane from the Marcellus and Utica basins eastward to the Marcus Hook Industrial Complex (MHIC) in Delaware County, Pennsylvania and Claymont, Delaware. (Id. ¶ 9.) Condemnor's business plan always contemplated intrastate shipment, but at a later time. (Id.)

Following a harsh winter in 2013-14, Condemnor experienced an increase in shipper demand for intrastate shipments, causing it to accelerate its business plan

to include intrastate shipments earlier than originally planned. (Id. ¶ 10.) Phase II, or Mariner East 2, calls for placement of two pipelines adjacent to one another over a portion of the existing Mariner East 1 line, which runs from Delmont, Pennsylvania, to MHIC, and placement of a single line over a portion of the existing Mariner East 1 line between Delmont, Pennsylvania and the West Virginia border. (Id. ¶ 39.) Mariner East 2 will be primarily underground, except for valves, and will be mostly parallel to and within the existing Mariner East 1 right of way. (Id. ¶ 42.)

To accommodate this increased need, on May 21, 2014, Condemnor filed an application with the Pennsylvania Public Utility Commission (PUC) seeking to clarify an August 29, 2013 Order, that granted it the authority to suspend and abandon east-to-west gasoline and distillate service in certain areas. (Id. ¶ 12.) On July 24, 2014, the PUC issued an Opinion and Order, which reaffirmed Condemnor's authority under an existing Certificate of Public Convenience (CPC) to transport petroleum products and refined petroleum products between Delmont, Westmoreland County, and Twin Oaks, Delaware County. (Id. ¶ 13; PUC Op. and Order, R.R. 43a-53a.) Condemnor was first issued a CPC in 2002 after the PUC approved the transfer of assets and merger of Sun Pipe Line Company and Atlantic Pipeline Corporation with Condemnor. (Declaration of Taking, ¶ 6; CPC dated Feb. 26, 2002, R.R. 26a.) After the PUC issued its July 24, 2014 Order, Condemnor filed the necessary tariff that established PUC-regulated transportation rates for west-to-east intrastate movement of propane from Mechanicsburg, Cumberland County, to Twin Oaks. (Declaration of Taking, ¶ 16.) The tariff was approved by the PUC, effective October 1, 2014. (Id. ¶ 17; PUC Op. and Order, R.R. 55a-59a.)

Under the CPCs issued by the PUC, Condemnor is authorized to transport petroleum and refined petroleum products bi-directionally in, *inter alia*, Allegheny, Westmoreland, Indiana, Cambria, Blair, Huntingdon, Juniata, Perry, Cumberland, York, Dauphin, Lebanon, Lancaster, Berks, Chester, and Delaware Counties. (Declaration of Taking, ¶ 21.) Because Condemnor's original service territory did not include Washington County, which is where the Mariner East service would originate, Condemnor filed an application to expand its service territory into Washington County on June 6, 2014, which was approved by the PUC by Order dated August 21, 2014. (Id. ¶¶ 22-23; CPC dated Aug. 21, 2014, R.R. 61a; PUC Op. and Order, R.R. 62a-66a.) Supplemental tariffs were thereafter filed and approved, adding new origin points in Houston, Washington County, and Delmont, Westmoreland County. (Declaration of Taking, ¶¶ 30-33; PUC Ops. and Orders, 68a-72a, 74a-77a.)

Following the filing of the Declaration of Taking, Condemnees filed preliminary objections challenging the condemnation on a number of grounds, which mirror the issues raised in this appeal. (R.R. 175a-82a.) Hearings were held on February 8, 2016 and February 29, 2016. On July 19, 2016, the trial court issued an order overruling the preliminary objections.[1] Condemnees filed a timely notice of appeal on July 29, 2016.[2]

---

[1] The trial court issued its Rule 1925(a) opinion on September 1, 2016, wherein it elaborated on the bases for its denial of the preliminary objections.

[2] On appeal of orders overruling preliminary objections in an eminent domain case, this Court's scope of review is limited to determining whether the trial court abused its discretion or committed an error of law. In re Condemnation of Certain Properties and Property Interests for Use as Public Golf Course, 822 A.2d 846, 849 n.6 (Pa. Cmwlth. 2003) (citations omitted). Because the trial court serves as fact finder, its findings will not be disturbed if supported by substantial evidence. In re Dep't of Transp., of the Right of Way for State Route 0202, Section 701, 871 A.2d 896, 900 n.2 (Pa. Cmwlth. 2005) (citation omitted).

## II.     Analysis

Condemnees assert a number of grounds to support reversal of the trial court.  Although they enumerate nine issues on appeal,[3] several are intertwined and

---

[3] Condemnees raise the following issues on appeal:

(1)     Did the [trial court] err in overruling [Condemnees'] preliminary objections, in their entirety, when [Sunoco I] did not involve or address all preliminary objections raised in this matter?

(2)     Did the [trial court] err in overruling [Condemnees'] preliminary objection regarding the [Condemnor's] resolution where it did not authorize the proposed condemnation and the law requires a valid resolution pursuant to 26 Pa. C.S.[] 302?

(3)     Did the [trial court] err in overruling [Condemnees'] preliminary objection challenging the attempted condemnation for two (2) pipelines when [Condemnor] admits only one (1) pipeline is needed?

(4)     Did the [trial court] err in overruling [Condemnees'] preliminary objection challenging the attempted condemnation because it is for private enterprise and thus prohibited by the Property Rights Protection Act, 26 Pa. C.S. [] §§ 201-204?

(5)     Did the [trial court] err in overruling [Condemnees'] preliminary objection relating to the bond amount when the evidence shows [Condemnor's] proposed bond amount was inadequate?

(6)     Did the [trial court] err in overruling [Condemnees'] preliminary objection challenging [Condemnor's] authority to condemn because Mariner East 2 is an interstate pipeline in interstate commerce subject to exclusive federal regulation thereby preempting any state/local regulation?

(7)     Did the [trial court] err in overruling [Condemnees'] preliminary objection challenging [Condemnor's] authority to condemn because, for Mariner East 2, it is not a public utility corporation, under the Pennsylvania Business Corporation Law (BCL) and it is not regulated by the Pennsylvania Public Utility Commission (PUC) as evident by the [Condemnor's] failure to provide any PUC orders or certificates pertaining to Mariner East 2?

(8)     Did the [trial court] err in overruling [Condemnees'] preliminary objection regarding collateral estoppel when Sunoco Pipeline, L.P. v. Loper, 2013-SU-4518-05 (C.P. York [], Feb. 24, 2014), reaffirmed March 25, 2014, evaluated [Condemnor's] status as a public utility corporation under the BCL and ultimately denied eminent domain power for Mariner East 2?

(9)     Did the [trial court] err in overruling [Condemnees'] preliminary objections in their entirety which thereby granted [Condemnor] the statutory power of eminent domain for Mariner East 2?

**(Footnote continued on next page…)**

can be consolidated into the following: (1) whether the proposed pipeline is solely interstate, subject only to the jurisdiction of the Federal Energy Regulatory Commission (FERC); (2) assuming it is not, whether Condemnor has the power of eminent domain as a "public utility corporation"; (3) whether there is a public need for the project; and (4) whether Condemnor procedurally complied with all the legal requirements to condemn the property, *i.e.* passage of appropriate corporate resolutions and posting of adequate bond.

Condemnor argues that the trial court properly relied upon this Court's holding in Sunoco I to deny the preliminary objections. In particular, Condemnor notes this Court has already found the PUC and FERC share regulatory responsibilities for the pipeline and that it is a public utility corporation under Section 1511 of the Business Corporation Law of 1988 (BCL), 15 Pa. C.S. § 1511(a)(2). Further, Condemnor argues that the Court previously found the PUC's issuance of a CPC conclusive that the project was for the benefit of the public and satisfied a public need. Finally, it asserts there is substantial evidence to support the trial court's findings that the corporate resolutions authorizing the taking were proper and bond posted was sufficient.

### A.    Nature of Pipeline

Condemnees first assert that the proposed pipeline is interstate and therefore subject to exclusive regulation by FERC. This Court addressed this exact issue in Sunoco I, wherein we held that the expanded Mariner East 2 pipeline would involve both interstate service subject to FERC regulation and intrastate service

---

**(continued…)**
(Condemnees' Br. at 9-11.)

6

subject to PUC regulation.[4]  143 A.3d at 1015.  As in Sunoco I, the evidence of record in this case supports this conclusion.  Harry Alexander, vice president of business development for Condemnor, testified to this effect.  (R.R. at 668a, 673a-74a.)  In addition, Condemnees' own expert, Dr. Dennis Witmer, acknowledged that companies can operate as both.[5]  (R.R. at 553a.)  The fact that the PUC issued Orders related to the project serves as further evidence that the pipeline also provides intrastate service because it would be outside the PUC's jurisdiction to regulate interstate service.  The trial court, thus, did not err in concluding the proposed pipeline was not within the exclusive jurisdiction of FERC.

### B.    Status of Condemnor

Next, Condemnees assert that Condemnor is not a public utility corporation and therefore lacks the power of eminent domain.  Their argument to this effect is three-fold.  First, they claim Condemnor is collaterally estopped from claiming public utility status based upon the Court of Common Pleas of York County's decision in Sunoco Pipeline, L.P. v. Loper, 2013-SU-4518-05 (C.P. York, Feb. 24, 2014), reaffirmed March 25, 2014, (Loper).  Second, they assert none of the orders or CPCs issued by the PUC pertain to the Mariner East 2 project.  Third, they claim Condemnor is a private enterprise, and, therefore, the Property Rights Protection Act (PRPA), 26 Pa. C.S. §§ 201-204, prohibits the condemnation.  Once again, Sunoco I controls disposition of these arguments.

---

[4] In Sunoco I, we explained that FERC's and PUC's jurisdiction is not mutually exclusive of one another; rather, a public utility can be and frequently is simultaneously regulated by both. 143 A.3d at 1004-05.

[5] Dr. Witmer's testimony was in a separate but related Washington County case, but was admitted into the record of this matter by Order of Court dated February 24, 2016.  (R.R. 656a-57a.)

As for Condemnees' collateral estoppel argument, this Court has already expressly held that Loper is distinguishable and, therefore, not dispositive. As we explained in Sunoco I, "[a]t issue in Loper was whether [Condemnor] satisfied the definition of public utility corporation as a result of the regulation of its interstate service by FERC and not as a result of PUC's regulation of its intrastate service." 143 A.3d at 1015. Because Loper did not address whether Condemnor was a public utility corporation based upon its regulation by the PUC,[6] the first element of collateral estoppel is not satisfied.[7]

This Court has already addressed Condemnees' argument that the PUC orders and/or CPCs do not cover the Mariner East 2 project. In Sunoco I, we detailed how the various PUC Orders and CPCs, which are common here, apply to the project. 143 A.3d at 1016-17. Because we have already concluded in Sunoco I that the CPCs and orders apply to both Mariner East 1 and Mariner East 2, we cannot conclude the trial court erred in so holding.

Finally, although not specifically addressed in Sunoco I, Condemnees' argument that the PRPA prohibits the condemnation because Condemnor is operating as a private enterprise is also foreclosed by our prior *en banc* decision. Condemnees rely on Section 204(a) of the PRPA, which prohibits "the exercise by any condemnor of the power of eminent domain to take private property in order to

---

[6] Condemnor had not yet sought approval from the PUC to provide intrastate service at the time Loper was decided. Sunoco I, 143 A.3d at 1015.

[7] To establish collateral estoppel, the following conditions must be met: (1) the issue or issue of fact previously determined in a prior action is the same; (2) the previous judgment is final on the merits; (3) the party against whom the doctrine is invoked is identical to the party in the prior action; and (4) the party against whom estoppel is invoked had a full and fair opportunity to litigate the issue in the prior action. Id. (citing Dep't of Transp. v. Martinelli, 563 A.2d 973, 976 (Pa. Cmwlth. 1989)).

use it for private enterprise." 26 Pa. C.S. § 204(a). However, Condemnees ignore that the **PRPA expressly excepts public utilities**.[8] 26 Pa. C.S. § 204(b)(2)(i). In Sunoco I, we found that Condemnor is a public utility under both the Public Utility Code (Code)[9] and BCL. Under Section 1104 of the Code, 66 Pa. C.S. § 1104, in order to have the authority to exercise the power of eminent domain, a public utility must possess a CPC issued by the PUC pursuant to Section 1101 of the Code, 66 Pa. C.S. § 1101. A CPC authorizes a public utility to begin to offer, render, furnish, or supply service and describes the nature of such service and the territory in which it may be offered. Sections 1101 and 1102(a)(1) of the Code, 66 Pa. C.S. §§ 1101, 1102(a)(1). As discussed above, Condemnor has CPCs issued by the PUC. In addition, under Section 1511(a)(2) of the BCL, a "public utility corporation" is vested with the power of eminent domain to condemn property for the transportation of, *inter alia*, petroleum or petroleum products. 15 Pa. C.S. § 1511(a)(2). "Public utility corporation" is defined to include "[a]ny domestic or foreign corporation for profit that . . . is subject to regulation as a public utility by

---

[8] The PRPA provides, in pertinent part:

(a) **Prohibition.--**Except as set forth in subsection (b), the exercise by any condemnor of the power of eminent domain to take private property in order to use it for private enterprise is prohibited.

(b) **Exception.--**Subsection (a) does not apply if any of the following apply:

. . .

(2) The property is taken by, to the extent the party has the power of eminent domain, transferred or leased to any of the following:

(i) a public utility or railroad as defined in [the Public Utility Code (Code),] 66 Pa. C.S. § 102 (relating to definitions).

26 Pa. C.S. § 204. Section 102 of the Code, in turn, defines a "public utility" as "[a]ny person or corporations now or hereafter owning or operating in this Commonwealth equipment or facilities for . . . transporting or conveying . . . petroleum products . . . , by pipeline or conduit, for the public for compensation." 66 Pa. C.S. § 102.

[9] 66 Pa. C.S. §§ 101-3316.

9

the [PUC] or an officer or agency of the United States," such as FERC. Section 1103 of the BCL, 15 Pa. C.S. § 1103; Sunoco I, 143 A.3d at 1003. As stated above, Condemnor is subject to regulation by both the PUC and FERC. Therefore, because Condemnor is a public utility, which is specifically excepted from the PRPA, we conclude that the PRPA does not bar the condemnation and affirm the trial court on this issue.[10]

### C. Public Need

Condemnees also forcefully argue that the existing Mariner East 1 pipeline has more than sufficient capacity to meet the public's demand and that absent a showing that a second pipeline is needed, Condemnor is not entitled to exercise its eminent domain power. As with the other arguments raised by Condemnees, this argument was also addressed in Sunoco I, which controls disposition here.

In Sunoco I, we explained that the Eminent Domain Code does not permit a court to review the public need for a proposed service. 143 A.3d at 1018. Citing Fairview Water Company v. Public Utility Commission, 502 A.2d 162 (Pa. 1985), we held that "determinations of public need for a proposed utility service are made by PUC, not the courts." Id. at 1019.

---

[10] Recently, our Supreme Court in Robinson Township v. Commonwealth, 147 A.3d 536 (Pa. 2016), found Section 3241 of Act 13, 58 Pa. C.S. § 3241, unconstitutional on its face as it grants a corporation the power of eminent domain to take private property for a private purpose, in violation of the Fifth Amendment of the United States Constitution and Article I, Sections 1 and 10 of the Pennsylvania Constitution. After comparing Section 3241 of Act 13 to Section 102 of the Code, the Court stated that Section 3241 "does not restrict the type of corporation eligible to take the subterranean lands of another property owner to only corporations that meet these specific legislatively imposed conditions for them to qualify for classification as public utilities." Id. at 587. Here, Condemnor is a certified public utility under the jurisdiction of the PUC exercising the powers of eminent domain pursuant to the Code and the BCL.

In this case, as in Sunoco I, the PUC has found a public need for the proposed pipeline. This is evidenced by its issuance of CPCs and accompanying Orders. For instance, in its July 24, 2014 Order, the PUC found that Condemnor's petition was in the "public interest" and that Condemnor's proposed intrastate propane service "will result in numerous potential public benefits." (R.R. at 51a.) Specifically, the PUC found expansion would allow Condemnor to "immediately address the need for uninterrupted deliveries of propane in Pennsylvania and to ensure that there is adequate pipeline capacity to meet peak demand for propane during the winter heating season." (R.R. at 52a.) In addition, it found the project will "further assist shippers in avoiding the added expense and risks associated with trucking the propane from the Marcellus Shale region to Mechanicsburg." (Id.) Similarly, in its August 21, 2014 Order that granted Condemnor a CPC to expand its service territory to Washington County, the PUC stated:

> Upon full consideration of all matters of record, we believe that approval of this Application is necessary and proper for the service, accommodation, and convenience of the public. We believe granting [Condemnor] authority to commence intrastate transportation of propane in Washington County will enhance delivery options for the transport of natural gas and natural gas liquids in Pennsylvania. In the wake of the propane shortage experienced in 2014, [Condemnor's] proposed service will increase the supply of propane in markets with a demand for these resources, including in Pennsylvania, ensuring that Pennsylvania's citizens enjoy access to propane heating fuel. Additionally, the proposed service will offer a safer and more economic transportation alternative for shippers to existing rail and trucking services. For these reasons, we conclude that approval of the Application is in the public interest . . . .

(R.R. at 65a.) In order to receive a CPC, an applicant must "'demonstrate a *public need or demand for the proposed service*.'" Sunoco I, 143 A.3d at 1019 (quoting

11

Chester Water Auth. v. Public Utility Comm'n, 868 A.2d 384, 386 (Pa. 2005)) (emphasis in original). Section 1103(a) of the Code requires as much. 66 Pa. C.S. § 1103(a) (requiring an applicant for a CPC to establish the proposed service is "necessary or proper for the service, accommodation, convenience, or safety of the public").

Here, the CPCs and Orders clearly establish that the PUC believes a public need for the proposed project exists, and the courts are not permitted to second guess the PUC's findings. To do so would "constitute impermissible collateral attacks on otherwise valid PUC orders." Sunoco I, 143 A.3d at 1017. Again, it bears emphasis:

> While courts of common pleas have jurisdiction to review whether an entity attempting to exercise eminent domain power meets the BCL criteria, that jurisdiction does not include the authority to revisit PUC adjudications. A CPC issued by PUC is prima facie evidence that PUC has determined that there is a public need for the proposed service and that the holder is clothed with the eminent domain power. This Court has stated "[t]he administrative system of this Commonwealth would be thrown into chaos if we were to hold that agency decisions, reviewable by law by the Commonwealth Court, are also susceptible to collateral attack in equity in the numerous common pleas courts."

Id. at 1018 (quoting Aitkenhead v. Borough of West View, 442 A.2d 364, 367 n.5 (Pa. Cmwlth. 1982)). The various CPCs and Orders related to the Mariner East Project issued by the PUC are conclusive evidence of public need. Therefore, the trial court did not err in overruling Condemnees' preliminary objections.

Condemnees further argue that the Pennsylvania Supreme Court's recent decision in Robinson Township v. Commonwealth, 147 A.3d 536 (Pa. 2016), commands that the public be the "primary and paramount beneficiary" before eminent domain power may be exercised. In Robinson Township, the Supreme

12

Court analyzed the constitutionality of a private natural gas company to exercise eminent domain pursuant to Act 13 of February 14, 2012, P.L. 87, 58 Pa. C.S. §§ 2301-3504 (Act 13). The Court's analysis did not impact the express authority of a public utility, such as Condemnor, to condemn property. Instead, the Supreme Court specifically noted that "public utilities have long been permitted the right to exercise powers of eminent domain conferred on them by the Commonwealth in furtherance of the overall public good." Robinson Twp., 147 A.3d at 587. As stated above, the PUC has already determined the proposed project is for the public good, and we cannot disturb this finding.

### D. Procedural/Technical Requirements

The final issue raised by Condemnees relates to whether the bond posted was adequate and the corporate resolution that was adopted authorized the taking. We find no error in the trial court's reasoning.

The adequacy or sufficiency of a bond amount in an eminent domain case is a matter within the trial court's discretion, which will not be disturbed unless there is a manifest abuse of discretion. In re Phila. Parking Auth., 189 A.2d 746, 752 (Pa. 1963); York City Redev. Auth. of City of York v. Ohio Blenders, Inc., 956 A.2d 1052, 1061 (Pa. Cmwlth. 2008); In re City of Scranton, 572 A.2d 250, 256 (Pa. Cmwlth. 1990). Here, the trial court held an evidentiary hearing to allow testimony from both parties as to the sufficiency of the bond amount. In its Rule 1925(a) Opinion, the trial court explained that it credited Condemnor's real estate appraisal and testimony of Paul D. Griffith over the testimony of Condemnee Mr. Blume. (Trial Ct. Op. at 13.) Specifically, the trial court found Mr. Blume's estimate of $600,000 in damages was "not reasonable, especially in light of the fact that there is an existing pipeline owned and maintained by Condemnor in place on

13

the property already, and running roughly parallel and adjacent to the proposed new pipelines." (Id.) The trial court was within its discretion to conclude that the $13,000 bond posted was sufficient.

Similarly, the trial court did not err in concluding the corporate resolutions authorized the condemnation. The Eminent Domain Code requires that a declaration of taking must contain "specific reference to the action, whether by ordinance, resolution or otherwise, by which the declaration of taking was authorized, including the date when the action was taken and the place where the record may be examined." 26 Pa. C.S. § 302(b)(3). Here, Condemnor introduced a corporate resolution of Sunoco Logistics Partners Operations GP LLC, which is the general partner of Condemnor, authorizing it to do and perform all acts necessary and appropriate to effectuate the implementation of the Mariner East 2 project, including acquiring rights of way and easements whether through purchase or condemnation. (R.R. at 144a-45a.) In a July 24, 2014 resolution, the Board of Directors for Sunoco Partners, LLC, which is general partner of Sunoco Logistics Partners, LP, authorized:

> the undertaking by the Partnership or one of its operating subsidiaries of any action or proceeding necessary or required in connection with the execution or implement of the Mariner East 2 Project, including the institution of condemnation proceedings or other action in connection with the use of eminent domain authority under applicable state law.

(R.R. 147a-48a.)

Condemnees' property was specifically identified as a property for which condemnation proceedings were to be pursued. (R.R. 150a-51a.) As such, the corporate resolutions complied with the statutory requirements, and the trial court did not err in so holding.

14

## III. Conclusion

As the trial court aptly recognized, several of Condemnees' arguments are identical or virtually identical to those previously asserted by others opposing condemnation of their properties in <u>Sunoco I</u>. Because the trial court correctly applied the principles in <u>Sunoco I</u>, we discern no error. Furthermore, to the extent Condemnees challenge the adequacy of the bond and corporate resolutions, which are factual determinations specific to this case, we conclude the trial court's findings are supported by substantial evidence. Therefore, we affirm.

_____
**RENÉE COHN JUBELIRER,** Judge

Judge Wojcik did not participate in the decision in this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Condemnation by Sunoco :
Pipeline, L.P. of Permanent and :
Temporary Rights of Way for the :
Transportation of Ethane, Propane, :
Liquid Petroleum Gas, and Other :
Petroleum Products in the Township :
of Upper Frankford, Cumberland :
County, Pennsylvania, Over the :
Lands of Rolfe W. Blume and :
Doris J. Blume :
  :
Appeal of: Rolfe W. Blume and : No. 1306 C.D. 2016
Doris J. Blume :

# **O R D E R**

     **NOW**, May 26, 2017, the order of the Court of Common Pleas of Cumberland County is **AFFIRMED.**

 

                              _____
                              **RENÉE COHN JUBELIRER,** Judge